## PISCATAQUA BANK v. TURNLEY.

### July 2, 1836.

*Rule to show cause of action, and why the writ of attachment should not be dissolved.*

Foreign attachment is limited in respect to the cause of action, to debts contracted or owing by the defendant, which is only extended to actions *ex contractu.*

Thus, where A has stolen from the agent of a bank a quantity of bank notes, the bank cannot maintain foreign attachment against A for the amount thereof, because the foundation of the claim is in matter *ex delicto.*

*Quære :* 1. Whether the felony does not merge or extinguish the civil injury, or at least suspend the remedy until the defendant shall have been prosecuted for the crime : 2. Whether any action *ex contractu* can be maintained for the cause stated.

THIS was a foreign attachment issued in case returnable to June term 1836. The facts as they appeared on the hearing of this rule were as follows. The Piscataqua bank, plaintiffs, is a corporation of the state of New Hampshire, and its bankinghouse is located at Portsmouth in that state. This bank made an arrangement with the Globe Bank of Boston, by which the latter institution agreed, on receiving a deposit of funds from the former bank, to redeem its bank notes in specie as they were presented. In pursuance of this arrangement, the Globe Bank redeemed notes issued by the Piscataqua Bank to the amount of 15,000 dollars. In the summer of 1833, these notes, inclosed in an envelope, and made up into a package, were transmitted by the Globe Bank to the Piscataqua Bank, by a person who travelled in public conveyances, from whom they were stolen by the defendant and two other persons while passing the ferry from Boston to Chelsea. The plaintiffs subsequently recovered 7600 dollars of the amount. *Affidavits* as to all these facts were regularly taken and read on the hearing of this rule ; and one of them averred that the defendant had passed off the balance " and received the money for the use of the plaintiffs." It further appeared that warrants had been issued and placed in the hands of the police to arrest the defendant on the criminal charge, but without success. This writ of attachment was laid on certain property of the defendant then being in the county of Philadelphia.

[Piscataqua Bank v. Turnley.]

The garnishee obtained this rule to show cause of action, and why the writ of attachment should not be dissolved.

*Sharswood* and *Brashears* (*D. P. Brown* with them), for the rule. The argument for the rule is cumulative.

1. The remedy for the private injury is suspended in a case of *felony*, until every thing has been done to satisfy public justice which can be done. A contrary doctrine would introduce great confusion into the administration of the law, and would convert the civil into criminal courts, besides opening a wide door to the compounding of felonies. The principle of public policy upon which the rule is established in England has as strong an application here as there. 1 *Chitty's Gen. Practice* 10 ; Horwood *v.* Smith, 2 *Term Rep.* 750 ; Crosby *v.* Leng, 12 *East* 409 ; Gimson *v.* Woodfall, 12 *Eng. Com. Law Rep.* 20 ; Cox *v.* Paxton, 17 *Vesey's Rep.* 329 ; 3 *Chitty's Blackstone* 119, *note* 2.

The case in Massachusetts mainly relied upon for the plaintiff was the case of a misdemeanor ; and the point of the decision was, that money paid upon a forged paper could be recovered back. The other cases, though containing doubts of the extension of the rule to this country, in effect sustain the general principle.

Nor does it affect the case that the felony, if committed at all, was committed against the laws of another state. The offence is *malum in se*, a crime against society at large. And though a court of one nation does not pay regard to the mere municipal laws of another, and will hold valid a contract made with a view to the violation of those laws, yet the case is different as to those acts which are *mala in se*. 3 *Kent's Comm.* 210.

Nor does the principle that a man shall not be permitted to set up his own infamy touch the cause at its present stage. It is taken upon the plaintiff's own showing. There is, however, one reported case in which the defendant was held entitled to *plead the fact* in bar of the plaintiff's recovery. Morgan *v.* Rhodes, 1 *Stewart's* (*Ala.*) *Rep.*

2. Admitting that the civil remedy exists, trespass or trover is the only proper form. *Buller's N. P.* 130, 131 ; Foster *v.* Tucker et al. 3 *Greenleaf's Rep.* 458. It would be going much further than ever yet has been gone to permit a plaintiff to waive a felony and bring an action for money had and received. It is the essence of such an

I.—2 P

HARV LAW SCHOOL LIBRARY.

action to admit the right of the defendant originally to take the goods. Eastwick *v.* Hugg, 1 *Dall.* 222.

3. By the terms of the act of assembly of 1705, the foundation of the claim upon which to institute a proceeding by foreign attachment must be a "debt contracted or owing," and the cases fully establish that it must arise *ex contractu*. *Purd. Dig.* 67 ; *Wharton's Dig.* 63, *tit. Attachment, B, b.* 20.

*Gerhard* and *F. W. Hubbell, contra.*

The cause of action arises from a felony committed in the state of Massachusetts, from which fact but two questions can now be presented : 1st. Whether the felony suspends the civil remedy ; and if not, 2d. Whether foreign attachment will lie.

1st. The rule that a felony suspends the civil remedy for any injury arising from such felony has been long established in England, though originating from judicial *dicta*. The courts of modern times have endeavoured to escape from its obligation ; and even in England, it is now restricted to cases embraced by what is alleged to be the principle of the rule, which is public policy, to force the individuals injured by a crime to prosecute the offender. Where, therefore, due diligence has been used to bring the criminal to justice, the rule is not applicable. Gimson *v.* Woodfall, 2 *Car. & P.* 41 ; 12 *Eng. Com. Law Rep.* 20. So after an acquittal of the defendant upon an indictment for the offence, a civil action will lie. Crosby *v.* Long, 12 *East* 409.

But a party can in no case set up his own felony in bar, unless it appear without his exhibition of it. Lutterill *v.* Reynell et al., 1 *Mod. Rep.* 283.

Even thus restricted, the rule has not received general adoption in this country, and is against our policy ; private prosecutions are encouraged in England, but not in the United States. Boardman *v.* Gore et al., 15 *Mass. Rep.* 331 ; Allison *v.* The Bank of Virginia, 6 *Rand. Rep.* 223 ; Grafton Bank *v.* Flanders, 4 *N. H. Rep.* 243 ; Smith *v.* Weaver, 2 *Haywood* 108.

In the present case the rule would not be applicable even in England ; and supposing that Pennsylvania has adopted it, though we contend that this is not the case, it cannot defeat the plaintiff's action.

The warrants issued by the mayor of the city of Philadelphia, and by one of the aldermen of the county (filed among the papers in this

[Piscataqua Bank v. Turnley.]

cause) show, by their date, that the police have, for some time, been in pursuit of the defendant on the criminal charge, and by the *affidavits* (necessary to sustain an action of foreign attachment) it is made to appear that he is no longer within this commonwealth; the plaintiff has therefore used due diligence to prosecute the defendant, and it would be absurd to oblige him to abstain from any civil remedy which may be available to follow up a certainly fruitless prosecution.

Again, the felony, in the present case, was committed in Massachusetts, and the rule is one of mere policy. Pennsylvania has nothing to do with the policy of Massachusetts. The courts of one sovereign will not regard the policy of another sovereign.

2d. Will an action of foreign attachment lie in this case? Trover and *assumpsit* for money had and received can be maintained, and either form of action would be good in foreign attachment.

*Money had and received* will lie for bank notes; 2 *Starkie's Ev.* 62, n. (*k*); Miller *v.* Race, 1 *Burr.* 452 ; Lowndes et al. *v.* Anderson et al., 13 *East* 130 ; Solomons *v.* The Bank of England, 13 *East* 135, n. (*b*); Holiday *v.* Ligil, 2 *Carr. & P.* 176, 12 *Eng. Com. Law Rep.* 78 ; and no one doubts that trover would lie. Beckwith *v.* Corrall, 3 *Bing.* 444.

The act of assembly granting the writ is a remedial law, and should receive a liberal construction. Section 3d has the words "debt or *other demand.*" The action lies in all cases where bail may be demanded, according to our practice. Fisher *v.* Consequa, 2 *Wash. C. C. Rep.* 382.

This is not a regular trial of a cause, but an effort to break down a case by a collateral application at the commencement of the suit, which, as it is *in rem* so far as the plaintiff is concerned, is ended at once by the dissolution of the attachment, and that too without the possibility of our obtaining the decision of a higher tribunal. Not so with the defendant. If the court refuses to quash the attachment, he may still have a regular trial by the entry of special bail.

Again, this is an appeal to the equity of the court, just like an application to discharge a defendant from an arrest; and the court will not interpose in some of such cases, though they be convinced that, eventually, the plaintiff will be defeated. Thus if an infant, representing himself to be of full age, contracts a debt, though the contract will not bind him, the court will not discharge him from arrest; and the same is true in the case of a married woman alleging herself to be sole. The present instance is within the same principle.

[Piscataqua Bank v. Turnley.]

The opinion of the Court was delivered by

JONES, J.—Two questions have been discussed in this case, which it is not necessary now to decide: 1st. Whether the felony does not merge or extinguish the civil injury, or at least suspend the remedy until the defendant shall have been prosecuted for the crime. 2d. Whether any action *ex contractu* can be maintained for the cause set forth in the *affidavits*. Still, as these questions have been raised, we take occasion to say, it is by no means clear that this rule could be supported on either of these grounds. The principle that a felony merges a trespass is not coeval with the common law. *Bracton, lib.* 3, *c.* 32; *Fleta, lib.* 1, *c.* 38; *Stannford's, P. C., lib.* 1, *c.* 15; *Doctor & Student, Dial.* 2, *ch.* 54, *at the end;* Markham *v.* Cobb, *Wm Jones's Rep.* 147, *per Doddridge & Whitlock.* It appears to have been introduced in connection with, and in aid of, the law of forfeiture of goods, of waifs, fresh suits, &c., a portion of the common law which was never received in Pennsylvania. Yet, notwithstanding the rigour with which forfeitures were formerly exacted in England, the party injured was always allowed his remedy for the particular wrong by appeal (or action of felony as *Stannford* calls it), which was a proceeding of a mixed character, having respect to public justice as well as the private wrong, though it differed materially from proceedings by indictment. This remedy has never been resorted to in Pennsylvania, and is altogether at variance with the spirit of our institutions. The rule was afterwards modified in England, so as merely to suspend the remedy of the party until the felon should be prosecuted for the crime. 1 *Chitty's Prac.* 10, *and cases cited.* This change in the rule appears to have been a consequence of the statute 21 *Hen.* 8, *c.* 11, which gives to the party injured a right to have his goods again, after conviction upon an indictment; on condition, however, that he procures the conviction of the felon by his own evidence, or by the evidence of others. Markham *v.* Cobb, *Wm Jones's Rep.* 148. The qualified right given by the statute to the party, appears to be the origin of the modern rule, which is supported on principles of public policy, as evinced by the statute, and supposed to be indispensable to the ends of public justice. Master *v.* Miller, 4 *T. Rep.* 332, *per Buller, J.* That statute was never in force in Pennsylvania, nor has the right of the party in this state, to have his goods again, ever been suspended upon any such condition. Admitting however that the rule, in either form, exists in this state, it cannot be applied to the case under consideration. The larceny

[Piscataqua Bank v. Turnley.]

mentioned in the *affidavits* filed in this case, was committed in Massachusetts, and the rule, if it exists here, can have respect only to the criminal laws of this state. To make it the means of enforcing the criminal laws of another state or country would, in effect, make the civil courts of the commonwealth police agents for the world. Besides, the rule in England does not appear to be extended to felonies by statute. *Dyer's Rep.* 50; but see Proctor *v.* Berry, 1 *Barnes's Notes* 450. Although the justice of this discrimination may perhaps be questioned in regard to the criminal laws of the particular state, still if we are to give the rule an extra-territorial effect, it will not be contended that is to be used as a means of enforcing every arbitrary foreign police regulation of a criminal character. Yet no discrimination can be made, except between felonies at common law and felonies by statute, and by that discrimination, this case, immoral as is the act imputed to the defendant, would be excluded. Rex *v.* Westbeer, 8 *Co. Rep.* 33; 2 *Strang. Rep.* 1133, 1137; Act of the 5th of April 1790, sect. 5.

Nor is it clear that the rule which allows a party to waive a *tort* is inapplicable to this case. If it should be decided that the rule itself is not in force in this state, it would seem to follow, that the party might deal with the act of the defendant in this case as with any other mere trespass. The crime and the trespass are *diverso intuitu;* the former respects only the public. The *animus furandi* adds nothing to the private injury, though it is the only matter of public concern. *Doctor and Student, Dial.* 2, *ch.* 54, *p.* 281; 4 *Bl. Comm.* 5, 6; *Latch* 145; *Wm Jones's Rep.* 149.

But we do not decide these questions. An insuperable difficulty in the plaintiff's way arises from the act of 1705. The use of the process of attachment for the commencement of an action is not commensurate with that of summons. It is limited, in respect to persons, to non residents, and in respect to the cause of action, to debts contracted or owing, which, by the interpretation of the courts, is extended to all actions arising *ex contractu* but no further. The cause of action shown in this case is not of this description. The action of debt is founded upon an express contract, and it lies by reason of a breach of contract. 1 *Esp. Dig.* 172; 2 *Dall.* 173; 2 *Rolle's Rep.* 441; 2 *Wash. C. C. Rep.* 386; 2 *Brown's Rep., App.* 38. In this case the action arises *ex delicto,* from a *tort* committed under circumstances and with an intent which amounts to crime. It is not an answer to say that the plaintiff may waive the *tort.* Perhaps he may do so, as it respects the action,

[Piscataqua Bank v. Turnley.]

(although that is a point which we do not decide) still he cannot do so as it respects this process. The reason is, the act of 1705 does not apply to the form of the action, but to the cause of the action. The form of the action may be debt, *indebitatus assumpsit*, or on the case, but the cause of the action must arise from a contract. The argument that the act is remedial and should be liberally construed in favour of the remedy, may be answered from the preamble of the act itself. It recites that "the effects of persons absenting are not equally liable with those of persons dwelling upon the spot, to make restitution *for debts* contracted, &c., to the great injury of the inhabitants," and then provides for the defect in respect to liabilities arising from the breach of contracts. Beyond that the legislature did not see proper to go; and we have no power further to supply the defect by enlarging the use of this process.

Rule absolute.