## Porter et al. *versus* Hildebrand.

1. *Foreign attachment* will not lie upon a demand founded in *tort.* It will not lie to recover from common carriers, damages for the loss of a trunk, where the declaration is *in tort,* and not *in contract.*

2. A carpenter may recover from carriers, tho value of tools contained, with clothing, in his trunk, which has been lost by the carriers, the jury having found that they were the reasonable tools of a carpenter.

3. The court may permit the Christian name of a defendant to be added, when he has been sued by his surname only.

ERROR to the District Court of *Allegheny county.*

This was a proceeding in foreign attachment instituted by Hildebrand against —— Moore, —— Porter, and others—under the name of the Ohio Stage Co., to recover the value of a trunk, and its contents, alleged to have been delivered by the plaintiff to the defendants, owners of a public stage, to carry from Pittsburgh to Wooster, Ohio.

The attachment was served on John Meskimen, the agent of the Ohio Stage Co. in Pittsburgh, and returned *nihil* as to the others. Upon the return of the writ, defendants' counsel moved to dissolve the attachment, on account of the omission of the Christian names of defendants, and because foreign attachment would not lie. When this motion came up for argument, the court permitted the

[Porter et al. *v.* Hildebrand.]

Christian name of Porter, one of the defendants, to be supplied, by prefixing Kemble R. thereto, and dismissed the motion. A declaration was then filed, consisting of four counts, against "Kemble R. Porter and others."

The 1st count was against K. R. Porter and others, as the proprietors of a common stage coach for the conveyance of passengers, &c., and charged them with receiving plaintiff and his trunk, "to be carried, &c. safely," and set forth the breach as follows: "Yet the said defendants, &c., the plaintiff did not safely carry, &c., but so carelessly and negligently behaved, that by the negligence, &c. of said defendants, the trunk was lost," &c.

The 2d count was against defendants, "as common carriers of passengers, and their luggage, from Pittsburgh to Wooster, in said stage; and charged that, as common carriers, they received plaintiff and his trunk, &c., to be carried safely," &c., and laid the breach as follows: "Yet said defendants, not regarding their duty as common carriers, but intending to deceive, &c., did not safely carry, &c., but behaved themselves so negligently, &c., that by the negligence of the defendants, the said trunk, &c. was lost."

The 3d count, in which the receipt of the trunk, and an undertaking to carry it safely, was alleged, had been stricken out, on motion of plaintiff's counsel.

The 4th count was against defendants as depositors, and charged "the delivery of a trunk for safe keeping, and that through their negligence it was lost," &c.

The defendant, K. R. Porter, plead in abatement, that the undertakings, if any, were made with nine others, naming them. The defendant demurred to said plea, and plaintiff joined. The court overruled the plea, and entered judgment of *respondeat ouster*.

The defendant, K. R. Porter, then plead "not guilty."

Upon the trial; it was proved or admitted, that plaintiff took his seat in the Ohio Stage Co.'s stage, and paid his fare. That a trunk of a passenger was put into the stage-boot, and that the stage drove round several squares for passengers, and when it returned, the trunk was missing. That it contained $45 worth of clothing, and $55 worth of carpenter's tools. That the plaintiff was a carpenter, moving to the State of Ohio, &c.

Defendants' counsel requested the court to charge the jury that plaintiff could not recover in foreign attachment. The court, LOWRIE, J., reserved the question, which, after verdict, was argued and decided in favor of plaintiff. Verdict was rendered for $45 for clothing, and for $55, value of tools, and that they were the reasonable tools of a carpenter.

Exceptions were taken:—1. The court erred in permitting the Christian name of Porter to be supplied. 2. In deciding that foreign attachment would lie in this case. 3. In deciding the

[Porter et al. *v.* Hildebrand.]

plea in abatement against defendants.    4. In entering judgment for the tools, &c.

The case was argued by *Knox*, for plaintiff in error, and *Weaver*, for defendant.

The opinion of the court was delivered by

BELL, J.—In its origin, and under the acts of 1705, and 1789, the process of foreign attachment furnished a remedy, simply for the recovery of debts or damages, arising *ex contractu*. It is authoritatively said to be a means of securing the appearance of a non-resident debtor; Fitch *v.* Ross, 4 *Serg. & Rawle* 564, and in the only Pennsylvania cases in which the question has been made, it was denied that it lay to avenge injuries *ex delicto*. Jacoby *v.* Gogell, 5 *Serg. & Rawle* 450, Piscataqua Bank *v.* Turnley, 1 *Miles*, 312. Indeed, so far as I am informed, it has, at no time and nowhere been esteemed a mode of vindicating every wrong, which might be committed by a non-resident or his agent, and the impolicy of making it so is strongly intimated in Jacoby *v.* Gogell. As a peculiar remedy for enforcing payment of debts and other pecuniary obligations assumed by our neighbors or aliens, it has been found useful, though certainly not unattended with inconvenience; but I have heard no sufficient reason suggested for hazarding the doubtful experiment of conceding the extended efficacy, now, for the first time, claimed for it. If such reasons exist, they would be more properly addressed to the legislature, where alone resides the power of extending the sphere of its action, by specifically declaring the additional causes of complaint to which it should be applicable. An attempt by us to extend the circle of its operation, could only be effected by the declaration of a general rule, which would bring within its remedial power every species of tort, embracing every injury to persons, to property, and to reputation, including defamation, crim. con., assault and battery, and trespass *de bonis asportatis;* a stride which would be more apt to attract admiration of its boldness than commendation of its wisdom. The argument which favors it, rests principally, if not altogether, upon considerations of convenience and expediency, but these, addressed to a judicial tribunal, are wholly insufficient to warrant so large a departure from established understanding and settled practice, however potent they might be found in the ear of another branch of the government.

But it is said the legislature, by the 43d and succeeding sections of the act of 1836, relating to foreign attachments, intended to endow them with capacity for the redress of all personal injuries inflicted by non-residents. Such an intention is nowhere expressly set down in the statute, and I have been unable to extract from its provisions any, the slightest implication of it. On the contrary, a comparison of the new enactment with prior legislation

[Porter et al. *v.* Hildebrand.]

and judicial determination, will show that the leading object was to digest and codify principles and rules before ascertained, and by reducing them to the form of a statute, to render them more accessible to inquiry and facile of application. There are, to be sure, some additions for the improvement of the system, but these obviously have no relation to the question now agitated. The only one to which we are referred as possibly importing an intent to enlarge the operation of the writ, is the section which prescribes its form. It is suggested the words, "so that he be and appear, &c., to answer of a plea, (setting forth the cause of complaint,)" are broad enough to comprise all complaints. And so they are. Yet the question recurs, were they used in a sense so comprehensive? That they were not, is indisputable, from the nature of the remedy, as understood before the act of 1836, and the absence of any direct expression to indicate an intended extension of it; an omission wholly irreconcilable with the imputed legislative design.

But admitting all this, it is urged the plaintiff finds a secure footing in the character of his suit. It is said that though in form sounding in tort, it springs, in truth, from contract; and is subject to all the incidents of actions so founded. The nature of the remedy against common carriers, and the rules by which it is governed, have undoubtedly given rise to much diversity of sentiment and some contrariety of decision; some judges have been disposed to treat it as *quasi ex contractu,* though founded on the custom, and laid in express *tort;* while others have classed it according to the form of declaration used by the plaintiff. As illustrative of the former inclination, I may refer to Powell *v.* Layton, 2 *N. R.* 356, where a defendant was allowed to plead in abatement the non-joinder of his partner, though the *narr.* averred tortious negligence alone. Sir JAMES MANSFIELD, before whom the action was tried, seemed to think the remedy was necessarily founded in contract, and referred for the source of his impression to an observation of Lord MANSFIELD, that if a common carrier accept goods to carry, and then die, an action will lie against his executor. And so it will; but this by no means proves the position assumed. Since then, the subject has been more fully examined, and is, consequently, better understood. All the cases which treat of it were reviewed by the Supreme Court of New York, in the Orange Bank *v.* Brown, 3 *Wend.* 158, and glanced at in our own cases of Livingston *v.* Cox, 6 *Barr* 362; McCall *v.* Forsythe, 4 *W. & S.* 179; and Smith *v.* Seward, 3 *Barr* 342. These, after referring to the right of the plaintiff to bring either assumpsit on the implied contract, or case for negligence, fully establish that the form of action selected is to be governed by the rules applicable to it, in all other instances. The difficulty frequently experienced had been in determining from the shape of the declaration, which form of remedy was adopted; but Smith *v.* Seward, following

[Porter et al. *v.* Hildebrand.]

Corbett *v.* Parkington, 6 *Barn. & Cress.* 268, ascertain the criterion to be, not only in the absence or presence of an averment of *promise*, but of *consideration* also. Accordingly, in that case, a motion in arrest of judgment, because the jury had found against one of the defendants only, was overruled, on the ground that the declaration being for *a tort*, was both joint and several. So, in McCall *v.* Forsythe, a plea in abatement for *non-joinder*, failed of success, because the plaintiff had elected to sue for *a tort*, and not for a breach of contract. The very same thing was properly done, and for the same reason, in the case before us. That reason is conclusive, under the principles I have brought to view against the employment of a foreign attachment. Whether an action against a carrier upon his undertaking can be initiated by this process, it is unnecessary to say; certainly, one founded in pure *tort*, giving the plaintiff the advantage of suing a number less than all the persons associated in the business of carriers, cannot.

Another question disclosed by the record is, whether a recovery can be had for the value of the carpenters' tools, which the jury have found were a reasonable part of the plaintiff's baggage. In Hawkins *v.* Hoffman, 6 *Hill* 590, it is said that baggage is not strictly confined to clothing, but includes many other articles of comfort and convenience, as even a gun and fishing-tackle; and in McGill *v.* Rowand, 3 *Barr* 451, a recovery for the value of a wife's jewelry was permitted. Under the principles which seem to have governed in these cases, I do not perceive why the plaintiff may not call on the stage proprietors to make good the value of the tools lost, upon the special finding of the jury. The right to carry tools as baggage, is unquestionably open to abuse; but in the language of the court, in the case last cited, the correction is to be found in the intelligence and integrity of the jury called to determine, under the circumstances of each case. It is, it is said, a common thing for journeymen mechanics to carry in their trunks with clothing, a small and select portion of their tools. To this practice I see no such objection as ought to put this kind of property out of the protection afforded to the necessaries a traveller is compelled, by legitimate considerations, to transport with his person. Upon this score, the judgment rendered below is, I think, unobjectionable.

The remaining inquiry, whether the court properly estimated the act of 16th February, 1846, in permitting the addition of the defendant's Christian name, is one of importance in practice, but happily without difficulty. Prior to the act, this court, for want of power, refused to sanction an amendment of the writ, by changing the averment of a defendant's name from John to James. To supply this defect, the statute confers the power to permit such amendments of the record, when it shall appear a mistake has been made in the Christian or surname of any party, plaintiff or defend-

M

[Porter et al. *v.* Hildebrand.]

ant.  In Horbach *v.* Knox et al., 6 *Barr* 377, it was objected that the act did not sanction the change of a christian name, because the amendment contemplated was *in*, and not *of* the name.  But this hypercriticism was properly put aside with the observation that the object was to remedy a defect in the administration of justice, and therefore a liberal interpretation should be awarded to the statute.  Less than this would not only frustrate the legislative intent, but run in contradiction of the professional sentiment, which is fast learning to regard merely technical objections as entitled to little favor.  Now what difference in principle is there between a total change of name and supplying an omitted one.  The surname is correctly given; the conferred name omitted, because unknown.  Why, under the act, should a plaintiff be denied the privilege to fill the blank, which he is admitted to *strike* out and supply?  The one case is as much within the mischief felt, as the other, and both are equally within the equity of the remedy provided.  To attempt a distinction in the splitting of such a hair as this, would indeed evidence a singular inclination to return to the nice subtleties which marked the early history of the common law.  The only danger to be apprehended from a liberal construction is, of a mistake in the service of process; but this is always within the control of the proper tribunal.  Such a mistake would always be committed in the service of a writ, without the insertion of *any* name.  No one could possibly be summoned by the exhibition of process so emasculated.

The objection to the nature of the writ used, goes to the root of the action; but I have noticed the other errors assigned, in obedience to the act of Assembly, and because, should the action be renewed, a profitless contest upon indisputable points may be thus avoided.

Judgment reversed.