## ROGERS vs. HUIE.

Where a motion for a new trial is made on the ground that the party was taken by surprise at the trial by the non-attendance of witnesses, it should appear that the party had used reasonable diligence in endeavoring to procure the attendance of his witnesses at the first trial.

Where it did not appear that the defendant had made any efforts to have his witnesses subpœnaed, or to procure their attendance, until the morning of the day for which the cause was set down for trial, and on which it actually was tried; *held*, that the party had not used proper diligence, and that the decision of the district court, refusing a new trial, was correct.

Where a motion for a new trial is made on the ground of surprise, the affidavits on which the motion is founded, should set forth particularly and distinctly the facts which the party expects to be able to prove by his witnesses on a new trial; and *held*, where the affidavits did not set forth the facts to which the party expected his witnesses would testify, that a new trial was properly refused.

The affidavits of the witnesses themselves should, also, if practicable, be procured, setting forth the facts, within their knowledge, to which they can testify, in case a new trial should be granted. *Per* BENNETT, J.

The same rules apply in case a new trial is asked for on the ground of newly discovered evidence. *Per* BENNETT, J.

An auctioneer who receives and sells stolen property, innocently, and in the ordinary course of his business, is liable to the true owner for the conversion thereof; and that, too, without the previous prosecution and conviction of the felon, and although the auctioneer had paid over to the felon the money received on the sale of the goods, before notice that the goods had been stolen.

Whether an action could be sustained against the felon himself; *Query?*

ACTION of trover. The plaintiff alleges in his complaint that, on the 12th day of December, A. D. 1850, he was the owner of twenty-nine kegs of butter, of the average weight of twenty-five pounds each, and of the value of thirty cents per pound; and also of one hundred cheeses, weighing fifteen hundred pounds, and worth twenty cents per pound; and that the value of the butter and cheese together was five hundred and seventeen dollars. The complaint further alleged that the butter and cheese were taken away from the plaintiff without his knowledge and consent by some person or persons to him unknown, and passed into the hands of the defendant, an auctioneer in

Rogers *v.* Huie.

San Francisco, who converted them to his own use without the knowledge or consent of the plaintiff.

A general answer was put in by the defendant denying the allegations of the complaint.

The cause was tried before a jury, who rendered a verdict in favor of the plaintiff for $437,50.

It was established, on the trial of the cause that the plaintiff, who was a merchant in Boston, shipped the butter and cheese in question to his agent at San Francisco, and that, on their arrival at that place, the agent had them lightered from the ship, and deposited on shore, on the 9th day of December, where they were left. On the 14th day of December, the agent went to show them to a customer, and found that they had been carried away. They had, in fact, been stolen, and taken by the thief to the defendant, who was an auctioneer, and by him sold in the usual course of his business. The proceeds of the sale, after deducting the commissions of the defendant, had been paid over to the thief. There is no suspicion that the defendant supposed that the property had been stolen, or that he acted otherwise than in perfect good faith.

There was no evidence to show that the thief had been convicted for the larceny.

The court was asked to charge the jury upon several points, only two of which it will be necessary to refer to, as they were the only ones insisted upon by the defendant's counsel on the argument in this court. They were as follows :—

1st. That if the defendant acquired the possession of the goods in market *overt*, or in the course of his public employment as an auctioneer, then the plaintiff cannot recover.

2d. That the plaintiff cannot recover, if the goods were stolen, until conviction of the felon.

The court refused to charge the jury as requested, and the defendant's counsel excepted.

After verdict a motion was made for a new trial, on the ground of surprise, founded on affidavits. The affidavits set forth, that on the trial of the cause the defendant was taken by surprise, and wholly deprived of the evidence of H. D. Newhall,

Rogers v. Huie.

W. J. Sherwood, T. McMahon, J. Josephs and L. Josephs, by whose testimony he expected to prove a complete and valid defense to the action; that, on the day of the trial, the names of the said witnesses were inserted in a *precipe* directed to the clerk of the district court, desiring him to issue subpœnas for the witnesses, and that such *precipe* was placed on one of the desks in the clerk's office, during the temporary absence of the clerk therefrom, in a position the most likely to attract the attention of the clerk on his return, but that, owing to some accident, it did not come to the knowledge of the clerk until a period too late for the purposes of the trial, in consequence whereof the defendant was obliged to go to trial, without the witnesses upon whose testimony he relied to support his defense, and who, as he believed, had been subpœnaed. The affidavits further set forth, that the defendant has a good and substantial and meritorious defense against the claim of the plaintiff, and that the testimony of the witnesses above named is important and material to his just defense, that he can produce such witness on a new trial, and that the failure of his witnesses to attend on the former trial, was not the result of negligence on his part, but was an accident which diligence could not prevent nor prudence foresee, and against which the defendant had attempted to guard.

The court refused to grant the motion for a new trial, and rendered judgment in favor of the plaintiff for the amount found by the jury. From this judgment the defendant appeals to this court.

*Calhoun Benham*, for appellant. I. The testimony offered by the plaintiff establishes that the goods charged to have been converted, were feloniously taken from the plaintiff's possession, and he cannot recover without showing a previous prosecution and conviction of the felon. (3 *Blackstone's Comm.* 119 *and notes;* 4 *id.* 6, *note* 8; 2 *R. S. of N. Y. p.* 220, *tit.* 1, *chap.* 4, *sec.* 2.) The common law has been adopted in this state, and we have no statute varying the rule of the common law, which merges the private injury in the public wrong.

II. The instructions asked by the defendant should have been given. An auctioneer who receives and sells property, in good faith, in the ordinary course of his business, is not liable for conversion of the property, in case it should turn out to have been stolen. An auctioneer is a public officer, licensed by the state, and is not individually liable.

III. A new trial ought to have been granted on the ground of surprise in the non-attendance of the defendant's witnesses. (6 *Mod. Rep.* 22; 11 *id.* 1; 14 *Johns. R.* 112; 2 *Johns. Cases,* 318.)

*Mr. Noyes,* for respondent. I. The defendant was liable for conversion, although he was an auctioneer, acting under a license from the state, in the ordinary course of his employment, and without notice that the goods were stolen. (*Hoffman* v. *Carew,* 20 *Wend.* 295; *and* 22 *id.* 317, *same case.*)

II. By the common law, the doctrine of merger was applicable only to actions brought against the thief, and not to actions against third persons. (13 *Mees. and Welsby,* 603; 6 *Barn. and Cress.* 564.)

III. The doctrine of merger of a private in a public wrong is not in force in this country. (*Plummer* v. *Webb, Ware's Rep.* 78.)

IV. The motion for a new trial was properly denied.

*By the Court,* BENNETT, J. The first point which I shall consider is, whether a new trial should have been granted; and this depends upon the question whether the affidavits on the part of the defendant, presented to the consideration of the district judge sufficient facts to require him to grant a new trial. The application ought not to have been granted, unless the defendant had used due diligence in endeavoring to procure the attendance of his witnesses. Did he use such diligence? I think not. His witnesses had not been subpœnaed, as appears from his own affidavit. Did he make reasonable efforts to have

Rogers v. Huie.

them subpœnaed? I think not. He made no attempt to subpœna them, until the morning of the day on which the trial was to take place, and actually did take place. This was not using due diligence. For this reason alone the court properly denied the motion for a new trial.

There is also another defect in the papers upon which the motion for a new trial was made. The affidavits do not state the facts which the defendant expected to be able to prove by his absent witnesses. In all cases in which a new trial is moved for, on the ground of surprise, or on the ground of newly discovered evidence, the evidence which the party moving expects to be able to produce on the second trial, should be fully and distinctly set forth in the affidavits on which the application is based, in order that the court may see whether the testimony, if given, could have any legal effect on the result of the controversy. And, as a general rule, the party ought not to rely on his own single and unsupported statement, but should, if possible, by the exercise of due diligence, procure the affidavits of the persons whose testimony he deems material, so that the court may be satisfied as to what facts they will testify. (*Ruggles* v. *Hall*, 14 *J. R.* 112; *Hollingsworth* v. *Napier*, 3 *Cai. R.* 182; *Kendrick* v. *Delafield*, 2 *Cai. R.* 67; *Denn* v. *Morrel*, 1 *Hall*, 382.) In the case at bar it does not appear that the witnesses who were absent could have testified to any state of facts which would have influenced the result. The same reasoning also applies to that portion of the defendant's affidavit, in which he states that he has a good and substantial defense. He does not set forth specifically wherein that defense consisted. A new trial should never be granted on such a general statement. If this practice were to be sanctioned, there would be no limit to applications for new trials. The court properly denied the motion.

An auctioneer who receives and sells stolen property, is liable for the conversion to the same extent as any other merchant or individual. This is so both upon principle and authority. Upon principle, there is no reason why he should be exempted from liability. The person to whom he sells, and who has paid

the amount of the purchase money, would be compelled to deliver the property to the true owner or pay him its full value; and there is no more hardship in requiring the auctioneer to account for the value of the goods, than there would be in compelling the right owner to lose them, or the purchaser from the auctioneer to pay for them. As a general rule any person who assumes and exercises a control over the property of another, without right or authority, must respond in damages to the value of the property; and I see no principle of policy for the encouragement of trade, or for convenience in the transaction of commercial business, under which an auctioneer should be permitted to claim an exemption from the general rule. /

Upon authority the case is clear. The very point was decided in *Hoffman* v. *Carew*, (20 *Wend.* 21; *and* 22 *Wend.* 285, *S. C.*) That case is in all respects analogous to the case at bar, and both the supreme court and the court of errors held the auctioneer liable. Senator Verplanck, in the court of errors, (22 *Wend.* 319,) speaking of the policy of the rule, uses the following language: "In this instance, the ruin falls hardly upon innocent and honorable men; but looking to general considerations of legal policy, I cannot conceive a more salutary regulation than that of obliging the auctioneer to look well to the title of the goods which he sells, and, in case of feloniously obtained property, to hold him responsible to the buyer or the true owner, as the one or the other may happen to suffer. Were our law otherwise in this respect, it would afford a facility for the sale of stolen or feloniously obtained goods, which could be remedied in no way so effectually as by a statute regulating sales at auction, on the principles of the law as we now hold it."

Does the common law protect the defendant from an action, on the ground that the thief has not been prosecuted and convicted? In some of the American cases, the rule that a felony suspends all right of private redress, is said to rest on a salutary principle of public policy, being designed to stimulate to the prosecution of offenders. (*Foster* v. *Tucker et al.*, 3 *Greenl.* 458; *Boody* v. *Keating*, 4 *id.* 164.) In other cases it is treated as a technical rule, and it is doubted whether it exists at all in this

country, or at least to more than a very limited extent. (*Man. and Mech. Bank* v. *Gore*, 15 *Mass.* 78 ; *Boardman* v. *Gore, id.* 331, 335, *et seq. ; Pettingill* v. *Rideout*, 6 *N. H.* 454 ; *Allison* v. *Bank*, 6 *Randolph*, 204, 223 ; *Piscataqua Bank* v. *Turnley*, 1 *Miles*, 312 ; *Plummer* v. *Webb, Ware*, 78.)

But this is not a case in which the common law doctrine that the civil action is merged in the felony, is applicable. The action is not against the thief himself, but against a third person, who, although innocently and in good faith, yet without right, has assumed to exercise a control over the property of the plaintiff. In *Stone* v. *Marsh*, (6 *Barn. & Cress.* 564,) Lord Tenterden says, "There is, indeed, another rule of the law of Eng- "land, viz., that a man shall not be allowed to make a felony the "foundation of a civil action ; not that he shall not maintain a "civil action to recover from a third and innocent person that "which has been feloniously taken from him ; for this he may do "if there has not been a sale in market *overt ;* but that he shall "not sue the felon." In *White* v. *Spettigen*, (13 *Mees. & Wels.* 602,) the doctrine of Lord Tenterden was carried into an express adjudication. It was there held that an action of trover was maintainable to recover the value of goods which had been stolen from the plaintiff, and which the defendant had innocently purchased, although no steps had been taken to bring the thief to justice, on the ground that the obligation which the law imposed on a person to prosecute the party who has stolen his goods, did not apply where the action was against a third party, innocent of the felony. POLLOCK, C.B., says, "The court of king's bench correctly " explained the law in the case of *Stone* v. *Marsh*, and the rule of " public policy which prevents the assertion of a civil right, in re- " spect of which a felony has been committed, applies only to " proceedings between the plaintiff and the felon himself, or, at " the most, the felon and those with whom he must be sued, and " does not apply to a case like the present, where the action is " brought against a third party, who is innocent of the felonious " transaction." All the other judges expressed opinions the same in substance as that declared by Pollock, C. B. That case is decisive upon the point under consideration.

It only remains to add that no such thing as market *overt* is known to our laws. The judgment should be affirmed.

Ordered accordingly.