### J. W. ROGERS, Resp., v. JAMES B. HUIE.

An auctioneer who, in the regular course of his business, receives and sells stolen goods, and pays over the proceeds of sale to the felon, without notice that the goods were stolen, is not liable to the true owner as for a conversion.

The decision in the case of Hoffman v. Caron, 22 Wend., is denied to be law.

The conversion is the gist of the action of trover, and without conversion, neither possession of the property, negligence or misfortune will enable the action to be maintained.

To render the defendant liable to the action, he must have converted the property to his own use.; and if not, then any other act to amount to a conversion, must be done with a wrongful intent, either expressed or implied.

APPEAL from the Fourth Judicial District.

The only question in the case is distinctly stated in the opinion of the Court.

*Barbour* and *Rice*, for appellant.
*Noyes*, for respondent.

HEYDENFELDT, Justice, delivered the opinion of the Court, with which ANDERSON, Justice, concurred.

The question to be here decided is, whether an auctioneer, who, in the regular course of his business, receives and sells stolen goods, and pays over the proceeds of sale to the felon, without notice that the goods were stolen, is liable to the true owner as for a conversion.

The only case precisely similar to this, is Hoffman et al. v. Caroh, 22 Wendell. That case was decided by the New York Court of Errors, composed then of the Chancellor and Senate, and upon the question there was a dissenting opinion and a divided vote. The majority of the Court held, that the auctioneer was liable. The opinions are long, and there is much argument placed on the ground of convenience. To this it can be very briefly replied, that there is as much or more of that species of reasoning deduced on the other side, and which will occur readily to any one, who considers the subject. The Chancellor commences his opinion thus—" The simple question presented for our decision in this case, is, whether the purchaser of stolen goods, who afterwards sells them as his own to a bonâ fide purchaser, is liable to the owner of the goods in an action of trover for such conversion thereof to his own use.''

It will be seen at one view, that he mis-states the facts in calling the auctioneer "the purchaser;" and he is guilty of *petitio principii* in styling the act of the auctioneer, "a conversion thereof to his own use," because the very point to be decided was, whether it was conversion or not. And as that is also the point to be here decided, it will only be necessary to examine the doctrine of conversion as expounded by writers upon the action of trover. The conversion, it will be conceded, is the gist of the action, and without conversion, neither possession of the property, negligence or misfortune will enable the action to be maintained. In illustration of this, it is settled that a bailee is not liable in trover where the goods have been lost or stolen, for there is no actual conversion. Stephens says, trover is a remedy to recover the value of personal chattels wrongfully converted by another to his own use. Chitty says, " The refusal to deliver goods upon demand, will not in all cases constitute a conversion, unless the party refusing have it in his power to deliver up the goods detained." 1 Chit. 160.

Lord Mansfield says in a case quoted, 3 Stephens's N. P., " A mere wrongful asportation of a chattel does not amount to a conversion, unless the taking or detention of the chattel is with intent to convert it to the taker's own use, or that of some third person, or unless the act done has the effect of destroying or changing the quality of the chattel." I have thus quoted enough

to show the doctrine of the law as it is laid down by the most approved authorities.

From these, it appears to me, that to be guilty, the defendant must have converted the property to his own use ; and if not, then, any other act to amount to a conversion must be done with a wrongful intent, either expressed or implied.   If one destroys a chattel wantonly, this is a wrongful intent expressed.   In the case of a common carrier, who delivers goods by mistake to the wrong person, this is a wrongful intent implied, because his undertaking was absolute to deliver to the right owner.

In the case under review, the defendant certainly did not convert to his own use ; and it would be impossible to say that he was guilty of a wrongful intent expressed or implied, when it is clear that he had no notice of the rightful ownership of the property, and was in the regular pursuit of his business as a public auctioneer.   He was the mere agent for the transmission of the property from one hand to another.   Each act committed in connection with the goods was not his act, but that of his employer. And although he might be liable to the vendee, if he did not at the sale disclose his principal, yet that liability would arise from a different doctrine entirely.

A case somewhat alike in principle to this is Greenway et al. *v.* Fisher et al., 1 Car. & Payne, 190, where it appeared that one of the defendants was a packer, who merely shipped goods which had been pledged by factors for their own debt.   Abbott, C. J., said : " On the part of Woodward reliance is placed, I think properly, on the circumstance of his acting in the ordinary course of his business ; and I am of opinion that the course of trade in this instance furnishes an exception to the general rule ; the distinction between this case and that of a servant, is, that here is a public employment ; and as to a carrier, if while he has the goods, trover will lie ; but if while he is a mere conduit-pipe in the ordinary course of trade, I think, he is not liable."

This case was cited by the counsel in the argument in Hoffman *v.* Caron, but is not noticed in the opinions of any of the majority of the Court, nor is the reasoning of C. J. Abbott at all answered.   It is true, Senator Verplanck notices the argument and in reply, says : " I cannot think the law charges one who had accidentally a temporary possession of goods without claim of

property, and with which he had parted before demand. It requires a wrongful taking or conversion of the thing itself to make the transaction tortious."

It is only necessary to quote this much of the Senator's language to give a complete refutation to his conclusion. He could not, in any stronger terms, have declared his opinion of the innocence of the plaintiff in error in that case.

The case of Saxeby v. Wynn, cited in 3 Starkie on Ev., 3d ed., 1160 n., is a case of much analogy in doctrine to the present. It is there held that, in many instances, proof of notice of the particular circumstances is necessary in order to show that the act of the defendant amounts to a conversion. Thus where an agent has the goods of his principal in his custody, and delivers them according to the order of his principal without notice of the previous transfer by the principal, he is not guilty of a conversion.

The case cited and the case at bar are both cases of agency. In the one case, the agent delivered the goods improperly, but without notice of the fraud of his principal; in the other, the agent delivers or sells improperly, but without notice of the felony of his principal; thus there is an evident similarity. Now suppose after the sale by the auctioneer, the vendee had refused to take the goods, and returned them to the auctioneer, and he to his principal, would the liability of the auctioneer be insisted on ? I put it thus strongly to show, that such proposition would shock our common sense of justice. And yet it is in effect not different from the facts of this case, except that it would be a stronger case of interference with, and control over the property ; for there are three distinct acts,—a sale, a rescission, and a delivering over to the employer ; all potent symbols of ownership.

I am satisfied, that the decision in Hoffman v. Caron, 22 Wendell, is not law ; and in this case, the judgment is reversed with costs.