JULIA KIMBALL, *Exec'x*, *versus* HARRISON A. BILLINGS.

A person is guilty of a conversion who sells the property of another, without authority from the owner, notwithstanding he acts as the agent or servant of one claiming to be the owner, and is ignorant of his principal's want of title.

And it is no defence to an action of trover that the property sold was government bonds payable to bearer, provided the principal was not the *bona fide* purchaser.

ON REPORT.

TROVER for the conversion of four hundred dollars of U. S. 7-30 treasury notes, Nos. 54,969, 73,089, and 73,090, each of the denomination of $100, with interest coupons attached, and Nos. 44,434 and 44,435, of the denomination of $50, with interest coupons attached. Writ dated May 12, 1864. Plea general issue.

*William H. Kimball,* called by the plaintiff, testified:— Lived with the plaintiff, my mother, in Gardiner, in 1862, 3 and 4. Capt. N. Kimball was my father. Knew all about the bonds. There were $3400 in bonds in a private safe in the house, in Feb., 1863. Was in the habit of cutting off the coupons and collecting them for mother. Kept a schedule of the numbers of the bonds. Collected interest Feb., 1863, when all the bonds were in the safe, of which mother kept the key. Went to the safe in August, 1863, to get coupons, when there were only $3000 in bonds. Made copies of my schedule and notified different banks. Found the three lost $100 bonds at Cobbosseecontee National Bank, J. Adams, cashier. The numbers corresponded with those in my schedule. Never found the $50s.

*Joseph Adams*, called by the plaintiff, testified:—Was cashier of Cobbosseecontee Bank in 1863 and 4. Purchased of defendant three $100 7-30 bonds in 1863 or 4, the numbers of which corresponded with Kimball's schedule. Think I had the two $50s. Had them of two ladies and a gentleman, neither of whom was Mrs. Witham.

Kimball *v.* Billings.

*Nath'l K. Theobald,* called by the plaintiff, testified:— Reside in Gardiner, and was .14 years old last February. Knew Mrs. James Witham; one house between her and plaintiff's, my grandmother, where I lived in 1863 and 4. Knew her boy Winfield S. Witham. He called himself 18. He kept a shop in Gardiner. I was frequently at his mother's. I took from grandfather Kimball's safe $400 in bonds, day before the loss was discovered, and handed the money to W. S. Witham. Three $100 and two $50s. Before that, Mrs. W. said I might as well have the money as to have my uncles squander it. I gave one $100 bond to Mrs. W. She called me a good boy. She told me not to tell, if I did it would put me in State prison. Nothing could be done with her as she did not take the bonds.

*Martin Burns,.* called by the plaintiff, testified:—Was with W. S. Witham when Nathaniel got the bonds,—three $100, and two $50s. Mrs. W. said,—"for God's sake don't tell, it will take me to State prison."

*Harrison Billings,* defendant, testified:—Kept. grocery in Gardiner in 1864; knew Mrs. James Witham; she traded with me some; supplied her with goods; received some bonds from her, should say about three years ago, could not say the number; more than one;. my impression is, three bonds. Think they were $100 pieces; could not say any $50s. Had them exchanged for her at her request, at the Cobbosseecontee Bank, Joseph Adams, cashier. Can't give the numbers; they were a little larger than greenbacks; some coupons attached; got money in exchange; sold no bonds to any one but Mr. Adams that I know of. She was about to settle with me for goods or had settled; can't say which. Can't tell the amount I received from Adams. She was, or had been, owing me about $30 for goods; can't say I took my pay out of the money. I was to send the money I got for the bonds to her, and suppose I did. I supplied her family, after that, about ten dollars. Soon after I took Mr. Wood as partner, and we continued to supply her; she paid me frequently for goods after that; I saw $300 in her

hands after that; can't say same money and same amount I sent her. Was told Witham was in the army.; saw the $300 some months after I had the bonds; she put it into my hands; it has not gone back to her or her husband. A criminal prosecution was pending when she handed it to me. I did not negotiate any other bonds than those with Adams.

Had been dealing with Mrs. Witham sometime before, — some months, perhaps a year. Was told she had a son in the army, that he was a lieutenant, and had been in the army some time. When she traded with me, she told me her husband and son sent her money to pay. I knew the capacity in which her son was serving. I had no suspicion, at the time the bonds were handed me, she was not the owner. I was not acquainted with that kind of securities. She showed me one of the bonds; offered it in payment. I remarked to her that there was a premium on certain kinds of bonds, and thought there was on this kind; she said if there was a premium, she would like to sell some she had at home. I told her I could exchange them at the bank, and could learn what the premium was; she said she would bring them or send them down for me to exchange them; soon after Winfield came in, handed me a roll, said that was the money. I took it and went to the bank, had a part or the whole changed, gave the money I received for them to the same boy; I think all of it. Did not hear of any bonds being lost by Mrs. Kimball till sometime after, perhaps six months. I believed the bonds were her property at the time. She did not give me any account of how she came by them. Don't know there was any demand made on me before the suit, for the bonds or money received for them. The $300 she put into my hands at the time the criminal prosecution was commenced against her; she wished me to show it to Clay or Kimball, to convince them it was not stolen. I don't recollect she had requested me to be her surety at that time. I am now reminded there was something said about Mr. Sawyer and myself being sureties. I was not her surety. I was trusted before I

paid back the money, — not more than a day or two after I received it. I have no claim on the money, unless it is my claim against her for ten dollars and the trustee process.

*Cross-examined.* — Had been acquainted with Mrs. Witham for considerable time. I supposed the Witham family worth considerable property. I supposed she owned the house where they lived; supposed Witham worth property; did not know. I think she showed me the bond the day I took them and sold them; she wanted me to see what they were worth; perhaps she asked me what they were worth; she did not appear to know their value. I supposed they were greenbacks, and supposed she thought so also. I had never heard of 7–30s then. I think she showed or handed me one as money. I did not pretend to know the value; she was a smart active woman; she did not assign any reason for wishing me to carry them to the bank. Had never had any business with her, other than small grocery bill. Don't recollect that we had any acquaintance other than at my store; sent the money to her by the boy; could not say I ever did anything of the kind for her before or since; perhaps had traded with her to the amount of $100 before that time. I think she told me she was going to get money to pay, from her husband and son in the army. She died about a year ago. Don't know her husband's business before he went into the army. He traded with me some before he left.

The case was taken from the jury and continued on report to the full Court, to draw such inferences as a jury might, and render judgment according to the law.

*A. Libbey* and *L. Clay*, for the plaintiff, cited *Gilmore* v. *Newton*, 9 Allen, 171; *Titcomb* v. *Wood*, 38 Maine, 561; *Stanley* v. *Gaylord*, 1 Cush., 536–550; *Atlantic Bank* v. *Merchants' Bank*, 10 Gray, 532, 540, 550 and 559; 2 Hill. on Torts, 554, 557, 558; *Galvin* v. *Bacon*, 11 Maine, 28; *Atl. Bank* v. *Skinner*, 4 Allen, 290; *Mason* v. *Waitt*, 17 Mass., 560; *Riley* v. *Boston W. P. Co.*, 11 Cush., 11; *McPartland* v. *Read*, 11 Allen, 231.

*J. Baker* and *N. M. Whitmore*, for the defendant,

1. Bonds being payable to bearer, the property in them vested by delivery, same as bank bills. 1 Hill. on Torts, 50, 51, 52, c. 1, §§ 45, 46, 48; *Atl. Bank* v. *Merch. Bank*, 10 Gray, 532, 550; Williams on Pers. Prop., 422, §§ 311, 312; *Wheeler* v. *Guild*, 20 Pick., 545; *Miller* v. *Race*, 1 Burr., 452; 1 Smith's Leading Cas., 250; *Grant* v. *Vaughan*, 3 Burr., 1516; *Peacock* v. *Rhodes*, 2 Doug., 333; *Collins* v. *Martin*, 1 B. & P., 648.

2. Bonds were taken by defendant in good faith without fault on his part. He has committed no tort.

3. Defendant did not convert to his own use. He did what he did innocently. Was not *particeps criminis*. Made no profit. Is not culpable. *Burdett* v. *Hunt*, 25 Maine, 419. No *mala fides*. *Clark* v. *Shee*, 1 Cowp., 197; *Foster* v. *Pearson*, 1 C. M. & R., 849; *Goodman* v. *Harvey*, 4 Ad. & El., 870; *Mauran* v. *Lamb*, 7 Cowp., 174; *Pearce* v. *Austin*, 4 Wheat., 489; *Barburin* v. *Daniels*, 7 La., 481; *Woodhul* v. *Holmes*, 10 Johns., 231; *Saltus* v. *Everett*, 20 Wend., 267.

WALTON, J.—It is no defence to an action of trover that the defendant acted as the agent of another. If the principal is a wrongdoer, the agent is a wrongdoer also. A person is guilty of a conversion who sells the property of another, without authority from the owner, notwithstanding he acts under the authority of one claiming to be the owner, and is ignorant of such person's want of title. Story on Agency, §§ 311 and 312, and authorities there cited; *Coles* v. *Clark*, 3 Cush., 399.

If, therefore, it be true, as the defendant says, that, in selling the bonds sued for in this case, he acted as the agent or servant of Mrs. Witham, and had no knowledge or suspicion that she was not the true owner of them, these facts constitute no defence to the suit. Mrs. Witham could not secure to him immunity for an act which she could not lawfully do herself.

Nor is it any defence that the property sold was government bonds payable to bearer. The *bona fide* purchaser of a stolen bond payable to bearer, might perhaps defend his title against even the true owner. But there is no rule of law that secures immunity to the agent of the thief in such cases; nor to the agent of one not a *bona fide* holder. The evidence in this case satisfies us that Mrs. Witham was not a *bona fide* holder; that she received the bonds well knowing that they had been stolen, if she did not in fact procure the theft to be committed. The defendant took the bonds into his possession, and, as her agent or servant, sold them.

The sale was a conversion of them, which made not only Mrs. Witham, but the defendant, liable for their value to the true owner. — The rule of law protecting *bona fide* purchasers of lost or stolen notes and bonds, payable to bearer, has never been extended to persons not *bona fide* purchasers, nor to their agents.

In *Burdett* v. *Hunt*, 25 Maine, 419, cited by defendant, the servant was held not liable, because he did not participate in the illegal sale; he was a mere carrier of the goods from the person lawfully in possession of them to the person to whom they were sold; and the Court held that such a removal was not under the circumstances an act of conversion. But the doctrine is there recognized that a sale by the agent would have made him liable.

Bonds to the amount of $400 were stolen from the plaintiff, but the evidence fails to satisfy us that more than three hundred dollars worth of them came into the hands of the defendant and were sold by him. The exact date of the sale is not shown, but we are satisfied it was as early as the *first* of November, 1863.

*Judgment for plaintiff for* $300,
*and interest from Nov.* 1, 1863.

Appleton, C. J., Cutting, Dickerson and Tapley, JJ. concurred.