[No. 12634. In Bank. — July 1, 1891.]

D. K. SWIM, RESPONDENT, *v.* JOHN SCOTT WILSON, APPELLANT.

TROVER — CONVERSION OF STOCK — SALE OF STOLEN CERTIFICATES BY BROKER — GOOD FAITH. — A stock-broker who sells certificates of stock which were indorsed in blank, and received by him for sale from one who had stolen them, is guilty of a conversion thereof, and is liable to the true owner of the stock for its value, although at the time the broker received the stock the thief represented himself as its owner, and the broker, in good faith, and without notice of the theft, sold the stock and paid the thief the net proceeds of the sale.

ID. — BONA FIDE AGENCY FOR THIRD PERSON — INSUFFICIENT DEFENSE. — It is no defense to such action that the defendant in selling the property acted as agent for a third person, who claimed to own it, although he acted in good faith, and in ignorance of such third person's want of title.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Wilson & Wilson*, for Appellant.

A commission stock-broker who, in the regular course
of his business, and in good faith, receives and sells stolen
stock, and pays over the proceeds of the sale to the felon,
without notice that the stock was stolen, is not liable to
the true owner as for a conversion. (*Rogers* v. *Huie*, 2
Cal. 571; 56 Am. Dec. 363. See *Greenway* v. *Fisher*, 1
Car. & P. 190.)   Both the plaintiff and defendant were
innocent parties, but if one of them must suffer, then he
who puts it in the power of the wrong-doer to do the
wrong must be that sufferer.   (Civ. Code, sec. 3543.)

*Tilden & Tilden*, for Respondent.

A stock-broker who sells and transfers stolen stock
cannot escape liability by paying the proceeds of such
sale to the thief.   (*Cerkel* v. *Waterman*, 63 Cal. 34; *Bar-
stow* v. *Savage Mfg. Co.*, 64 Cal. 388; 49 Am. Rep. 705;
*Swim* v. *Bernard*, 4 West Coast Rep. 525; *Pease* v. *Smith*,
61 N. Y. 480; *People* v. *Bank of N. A.*, 75 N. Y. 547; *Rogers*
v. *Huie*, 1 Cal. 429; 54 Am. Dec. 300.   See *Harpending*
v. *Meyer*, 55 Cal. 555.)   The rule laid down in *Rogers* v.
*Huie*, 2 Cal. 571, 56 Am. Dec. 363, is no longer law
in this state, as the code has, since that decision, ex-
pressly provided that an agent is responsible to third
persons as a principal, when his acts are wrongful in
their nature, adopting the New York rule approved in
*Rogers* v. *Huie*, 1 Cal. 429; 54 Am. Dec. 300.   (Civ. Code,
sec. 2343; N. Y. Civ. Code, sec. 1256.   See Story on
Agency, secs. 311, 312.)

DE HAVEN, J. —'The plaintiff was the owner of one
hundred shares of stock of a mining corporation, issued
to one H. B. Parsons, trustee, and properly indorsed by
him.   This stock was stolen from plaintiff by an em-
ployee in his office, and delivered for sale to the defend-
ant, who was engaged in the business of buying and
selling stocks on commission.   At the time of placing

the stock in defendant's possession, the thief represented himself as its owner, and the defendant, relying upon this representation, in good faith, and without any notice that the stock was stolen, sold the same in the usual course of business, and subsequently, still without any notice that the person for whom he had acted in making the sale was not the true owner, paid over to him the net proceeds of such sale. Thereafter the plaintiff brought this action to recover the value of said stock, alleging that the defendant had converted the same to his own use, and the facts as above stated appearing, the court in which the action was tried gave judgment against defendant for such value, and from this judgment, and an order refusing him a new trial, the defendant appeals.

It is clear that the defendant's principal did not, by stealing plaintiff's property, acquire any legal right to sell it, and it is equally clear that the defendant, acting for him, and as his agent, did not have any greater right, and his act was therefore wholly unauthorized, and in law was a conversion of plaintiff's property.

"It is no defense to an action of trover that the defendant acted as the agent of another. If the principal is a wrong-doer, the agent is a wrong-doer also. A person is guilty of a conversion who sells the property of another without authority from the owner, notwithstanding he acts under the authority of one claiming to be the owner, and is ignorant of such person's want of title." (*Kimball* v. *Billings*, 55 Me. 147; 92 Am. Dec. 581; *Coles* v. *Clark*, 3 Cush. 399; *Koch* v. *Branch*, 44 Mo. 542; 100 Am. Dec. 324.)

In *Stephens* v. *Elwell*, 4 Maule & S. 259, this principle was applied where an innocent clerk received goods from an agent of his employer, and forwarded them to such employer abroad, and in rendering his decision on the case presented, Lord Ellenborough uses this language: "The only question is, whether this is a conversion in the clerk, which undoubtedly was so in the master. The

clerk acted under an unavoidable ignorance and for his master's benefit when he sent the goods to his master; but, nevertheless, his acts may amount to a conversion; for a person is guilty of conversion who intermeddles with my property, and disposes of it, and it is no answer that he acted under the authority of another who had himself no authority to dispose of it."

To hold the defendant liable, under the circumstances disclosed here, may seem upon first impression to be a hardship upon him. But it is a matter of every-day experience that one cannot always be perfectly secure from loss in his dealings with others, and the defendant here is only in the position of a person who has trusted to the honesty of another, and has been deceived. He undertook to act as agent for one who, it now appears, was a thief, and, relying on his representations, aided his principal to convert the plaintiff's property into money, and it is no greater hardship to require him to pay to the plaintiff its value than it would be to take the same away from the innocent vendee, who purchased and paid for it. And yet it is universally held that the purchaser of stolen chattels, no matter how innocent or free from negligence in the matter, acquires no title to such property as against the owner; and this rule has been applied in this court to the case of an innocent purchaser of shares of stock. (*Barstow* v. *Savage Mining Co.*, 64 Cal. 388; 49 Am. Rep. 705; *Sherwood* v. *Meadow Valley Mining Co.*, 50 Cal. 412.)

The precise question involved here arose in the case of *Bercich* v. *Marye*, 9 Nev. 312. In that case, as here, the defendant was a stock-broker who had made a sale of stolen certificates of stock for a stranger, and paid him the proceeds. He was held liable, the court, in the course of its opinion, saying: "It is next objected that as the defendant was the innocent agent of the person for whom he received the shares of stock, without knowledge of the felony, no judgment should have been ren-

dered against him.   It is well settled that agency is no
defense to an action of trover, to which the present ac-
tion is analogous."

The same conclusion was reached in *Kimball* v.
*Billings*, 55 Me. 147, 92 Am. Dec. 581, the property sold in
that case by the agent being stolen government bonds,
payable to bearer.   The court there said:  " Nor is it any
defense that the property sold was government bonds
payable to bearer. [The *bona fide* purchaser of a stolen
bond payable to bearer might perhaps defend his title
against even the true owner.   But there is no rule of
law that secures immunity to the agent of the thief in
such cases, nor to the agent of one not a *bona fide*
holder. . . . . The rule of law protecting *bona fide* pur-
chasers of lost or stolen notes and bonds payable to
bearer has never been extended to persons not *bona
fide* purchasers, nor to their agents." ]

Indeed, we discover no difference in principle between
the case at bar and that of *Rogers* v. *Huie*, 1 Cal. 429, 54
Am. Dec. 300, in which case, Bennett, J., speaking for the
court, said: "An auctioneer who receives and sells stolen
property is liable for the conversion to the same extent as
any other merchant or individual.   This is so both upon
principle and authority.   Upon principle, there is no
reason why he should be exempted from liability.   The
person to whom he sells, and who.has paid the amount
of the purchase-money, would be compelled to deliver the
property to the true owner or pay him its full value;
and there is no more hardship in requiring the auc-
tioneer to account for the value of the goods, than there
would be in compelling the right owner to lose them,
or the purchaser from the auctioneer to pay for them."

It is true that this same case afterwards came before
the court, and it was held, in an opinion reported in 2
Cal. 571, 56 Am. Dec. 363, that an auctioneer who in the
regular course of his business receives and sells stolen
goods, and pays over the proceeds to the felon, without

notice that the goods were stolen, is not liable to the true owner as for a conversion. This latter decision, however, cannot be sustained on principle, is opposed to the great weight of authority, and has been practically overruled in the later case of *Cerkel* v. *Waterman,* 63 Cal. 34. In that case the defendants, who were commission merchants, sold a quantity of wheat, supposing it to be the property of one Williams, and paid over to him the proceeds of the sale, before they knew of the claim of the plaintiff in that action. There was no fraud or bad faith, but the court held the defendants there liable for the conversion of the wheat.

It was the duty of the defendant in this case to know for whom he acted, and, unless he was willing to take the chances of loss, he ought to have satisfied himself that his principal was able to save him harmless if in the matter of his agency he incurred a personal liability by the conversion of property not belonging to such principal.

Judgment and order affirmed.

Garoutte, J., McFarland, J., and Sharpstein, J., concurred.

Beatty, C. J., and Paterson, J., dissented.

Rehearing denied.