[Civ. No. 17620.   First Dist., Div. One.   May 28, 1957.]

HARRY MARGOLIS et al., Petitioners, v. SUPERIOR COURT OF SAN MATEO COUNTY et al., Respondents; UNITED STATES HOFFMAN MACHINERY CORPORATION (a Corporation), Real Party in Interest.

Dreyfus & McTernan for Petitioners.

No appearance for Respondents.

Currie, Lebsack & Hannig for Real Party in Interest.

WOOD (Fred B.), J.—Petitioners Harry and Ann Margolis seek a writ of mandate to require the superior court to proceed with the trial of an action wherein they are plaintiffs and United States Hoffman Machinery Corporation is defendant, an action for the conversion of certain dry cleaning equipment. The superior court has continued the trial of that action until the judgment becomes final in a claims and delivery action involving the very same equipment, an action wherein A. M. Grupp and Melvin A. Schiller, copartners, are plaintiffs and Margolis and wife are defendants, the Hoffman Corporation not being a party thereto. The judgment awarded this equipment to Grupp and Schiller but is not final because Margolis' appeal therefrom is still pending.

The main question is whether or not this judgment if and when it becomes final without modification will be determinative of one or more of the issues in the action not yet tried. (See *Houghton* v. *Superior Court,* 187 Cal. 661 [203 P. 765].)

The disparity of parties adversary to Margolis (Grupp and Schiller in one action; The Hoffman Corporation in the other) does not necessarily compel a negative answer. (See *Bernhard* v. *Bank of America,* 19 Cal.2d 807 [122 P.2d 892]; 2 Witkin, California Procedure 1751, Trial, § 24; 3 Witkin, California Procedure 1926-1929 and 1956-1962, Judgment, §§ 44-45 and 68-70.)

In the instant case, may it be said that one or more issues are common to both actions and that there is such a privity of interest between Grupp and Schiller and the Hoffman Corporation as would entitle the latter to invoke the Grupp and Schiller judgment as determinative of such issue or issues if and when the judgment becomes final?

Let us consider first, in their sequence, certain significant events that are not in dispute. In March, 1953, the Karps, owners of certain improved real estate, borrowed $6,000 of Margolis, giving as security a deed to the realty and a bill of sale for certain personalty (not including the equipment here involved). Later, Margolis reconveyed and the Karps gave Margolis a deed of trust and chattel mortgage to secure the loan.

In April, 1953, the equipment in question, which the Karps purchased from Hoffman, was installed in a building situate on the real property mentioned.

In February, 1954, Hoffman removed the equipment, Karps assertedly having failed to complete the purchase price.

In March, 1954, Eli Rosen bought the equipment from Hoff-

man and sold it to the Karps upon a conditional sales contract. The Karps installed the equipment upon the premises. Thereafter and prior to October 29, 1954, Rosen sold to Grupp and Schiller his interest in the equipment and in the contract of sale.

On September 1, 1954, Margolis bought the real property at a foreclosure sale conducted by the trustee, pursuant to the deed of trust given to secure the loan from Margolis to Karps.

The court among other things found that on several occasions between October 19, 1954, and February 10, 1955, the date of the filing of the complaint, Grupp and Schiller demanded and Margolis refused delivery of possession of the equipment; that Grupp and Schiller were entitled to possession on and after October 19, 1954; and that Margolis had no interest, ownership or right to the possession of the equipment.

Margolis' theory seems to be that the action not yet tried involves a transaction quite separate and distinct from and independent of the transaction involved in the action which has gone to judgment. In effect, he says that the removal by Hoffman in February, 1954, was a tortious interference with Margolis' security interest in the realty (the equipment having been so installed as to be a part of the realty) ; that Margolis has chosen to waive his right to follow that property, by electing to sue Hoffman for the value of it. He then argues, in effect, that the repurchase and reinstallation by Karps was a new and separate transaction, as much so as if Karps had bought other equipment (not the Hoffman installed and removed equipment) from some other manufacturer or distributor (not Hoffman). His argument concludes with the claim that the judgment in question decides issues peculiar to the second transaction; especially, that it is not determinative of the status of the equipment as installed in 1953 and later removed by Hoffman. This line of reasoning, if correct, would seem to entitle Margolis to the writ requested.

Counsel for Hoffman say that not only is this the same equipment, with Margolis' title based upon the same security instruments in each case, but that the equipment was installed in identical fashion each time and Rosen's title (likewise Grupp and Schiller's title) stems from Hoffman, thus furnishing the necessary privity or tie-in between the two transactions. Implied, we think, is the claim that in the action which went to judgment Margolis was asserting and trying title to this equipment predicated not only upon its having become a part of the realty when reinstalled (because of the manner of in-

stallation) but also upon the title acquired by Margolis when it was first affixed. ■ If it became a part of the realty when first affixed and Margolis' interest attached thereto, Margolis would not lose title upon its wrongful removal by Hoffman nor could Hoffman defeat that title by ''selling'' to Rosen, nor Rosen by ''selling'' to Karp and to Grupp and Schiller. Title would continue in Margolis. (Civ. Code, § 1743; *Swim* v. *Wilson*, 90 Cal. 126 [27 P. 33, 25 Am.St.Rep. 110, 13 L.R.A. 605]; *Woodsend* v. *Chatom*, 191 Cal. 72, 79 [214 P. 965]; *Barthelmess* v. *Cavalier*, 2 Cal.App.2d 477 [38 P.2d 484]; 22 Cal.Jur. 908, Sales, § 6; 46 Am.Jur. 620, 622, Sales, §§ 458, 459.)

■ If Margolis tried his title to this equipment he should have presented both sources of his asserted title: (1) the title he acquired when the equipment was first installed, a title not defeasible by wrongful removal by Hoffman, rendering Hoffman incapable of passing title to or vesting it in Rosen, Karp or Grupp and Schiller (unless Margolis chose to ratify the taking and hold Hoffman for the value of the property taken), and (2) the title Margolis claims he acquired when Karp and Rosen reinstalled the equipment. If he presented one source of title and not the other he may have split his cause of action.

Our examination of the record upon the appeal from the judgment indicates that Margolis tendered both sources of title for consideration and decision. We gather this from the pleadings, the findings and the briefs in that action.

In the first affirmative defense to their answer to the Grupp and Schiller complaint, Margolis and wife alleged that they ''are the legal owners of all of the property . . . [the equipment in question] . . . and were such at all times material to this action.'' (These allegations the court found untrue.) Attached to the answer physically and as a part of the same document the defendants Margolis pleaded a cross-complaint in three counts. Among the allegations are these: This equipment was purchased by Karp from Hoffman in 1952 and placed on the realty in April, 1953, remained there until about February 18, 1954, when it was removed by Hoffman with the knowledge and participation of Karp and Rosen. It was returned and reinstalled in March, 1954. Grupp and Schiller derived their claim to the equipment from Rosen with knowledge of the foregoing facts. They stand in Rosen's shoes. Some time during 1953 and 1954 the cross-defendants entered into a conspiracy which still continues to deny, deprive, and exclude the cross-complainants from their legal rights in and

to the ownership, possession and enjoyment of the realty and the equipment attached thereto. Hoffman removed the equipment in February, 1954, without the knowledge and consent of Margolis. Rosen purchased from Hoffman and sold to Karp in March, 1954, and the equipment was reinstalled that month. The acts of Karp, Rosen and Hoffman "in the initial installation, later removal, sale, and reinstallation . . . constituted a conversion thereof to cross-complainant's damage." Cross-complainants Margolis prayed for judgment in their favor and for a declaration that Grupp and Schiller have no right, title or interest in or to the equipment.

That, it would clearly seem, was a tendering of the issue of title to the equipment from the very instant of the first installation, not limited to the second installation. True, there is nothing in the clerk's transcript showing that permission was granted to bring in any new parties. Neither Rosen, nor Hoffman was an original party. Although such permission would be necessary to bring them in as new parties (Code Civ. Proc., § 389; *Brady* v. *Kobey*, 27 Cal.App.2d 505 [81 P.2d 263]; *Supermatic Products Corp.* v. *Hegberg*, 131 Cal.App.2d 168 [280 P.2d 152]) we find nothing in the clerk's transcript to indicate that the cross-complaint was stricken and nothing to indicate but that it was treated as a valid and proper cross-complaint insofar as it pertained to the plaintiffs and the other defendants, such as the Karps, who were already parties to the action. The applicable statute says that whenever the defendant seeks affirmative relief "against any party . . . affecting the property to which the action relates, he may, in addition to his answer, file at the same time, or by permission of the court subsequently, a cross-complaint." (Code Civ. Proc., § 442.) By the very terms of this statute no permission of court was required to file this cross-complaint as against plaintiffs Grupp and Schiller.

Moreover, prior to trial and with permission of the court, Margolis did bring the administrators of the *Estate of Rosen* into the action by cross-complaint. In this cross-complaint Margolis alleged among other things that this equipment was affixed to the realty some 19 months prior to the time [late October, 1954] of any alleged interest of Grupp and Schiller in the equipment. This obviously referred to the original installation made by Hoffman and Karp in April, 1953. Rosen's administrators as one of their defenses to this

cross-complaint alleged that Margolis and wife "at no time" owned this equipment.

Accordingly, it is a fair inference that the court was determining the issue of title with reference to the first installation as well as the second when it found (1) the defendants Margolis are not and were not the legal owners of this equipment; (2) in executing security documents the parties thereto intended to treat the personal property on the premises as separate from the real property, even though some of it was attached to the realty by various pipes, electrical and other connections and some items were bolted or screwed to the realty; (3) at the time of the making of the loan by Margolis this equipment was not on the premises and neither Margolis nor the Karps intended that such equipment was to become a part of the security for the loan, nor did Margolis rely upon it as security for the loan; and (4) said equipment "did not become a fixture."

Persuasive of this view is the statement of the case which appears in the fore part of the opening brief of the defendant-appellants Margolis upon their appeal from the judgment. They narrate the history of this transaction from beginning to end, including the loan from Margolis to Karps, the purchase of the equipment from Hoffman and its first installation in 1953, describing in detail the method of installation, its removal by Hoffman some ten months later because of the owner's delinquency in paying for the equipment, the purchase by Rosen, the resale to Karps and the reinstallation. Significantly the appellants say "in April, 1954, the machinery was reinstalled in the same manner as previously described. . . ."

Accordingly, if the judgment becomes final as rendered, it well may be determinative, by way of collateral estoppel, of some of the issues in the case not yet tried. Also, until the appeal is finally determined the difficulty of fixing the amount of the damages seems insuperable. Should appellants prevail upon their appeal and recover the property, their damages, if any, from Hoffman would be quite different from what they otherwise might be.

Upon the basis of the record before us we can not say that it was an abuse of discretion to postpone the trial pending the outcome of the appeal from the judgment. We are mindful, too, of the fact that the judge who ordered the postponement is the judge who presided at the trial and rendered the judgment and therefore well may be cognizant

of significant factors that the bare record before us may not fully disclose.

The alternative writ is discharged and the peremptory writ denied.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied June 27, 1957, and the following opinion was then rendered:

THE COURT.—In their application for a rehearing petitioners state that the cross-complaint first filed by them in the action which went to judgment was stricken by order of the court. That does not serve adequately to augment the record before us. Even if it did amount to such an augmentation it would not affect other grounds mentioned in the opinion heretofore filed, which led to the conclusion that petitioners failed to meet the burden imposed upon them of showing that the trial court abused its discretion when it ordered the postponement of which petitioners complain. That was all that we decided. We did not and do not intend to foreclose determination by the trial court of any such issues as res judicata, estoppel or collateral estoppel if and when such questions are presented upon resumption of the trial which has been temporarily postponed.