TOBIN vs. DEAL.

*February 21 — March 18, 1884.*

CONVERSION: DISTRESS. *(1, 2)* *Driving cattle away: Intent immaterial.* *(3) Temporary confinement of cattle: Abandonment of distress.*

1. One who unlawfully interferes with or exercises acts of ownership over the property of another, causing its loss, is liable therefor, and the motive prompting such act is immaterial unless as enhancing damages.

2. Thus, if cattle upon a highway are driven in a direction opposite to the known abode of the owner and, as a consequence, wander away and are lost, it is a conversion although such result was not intended.

3. COLE, C. J., is of the opinion that one who finds cattle doing damage upon his premises may confine them during the night, if necessary to protect his crops, and in the morning turn them into the highway whence they came; and if they then stray away and are lost he is not responsible.

APPEAL from the Circuit Court for *St. Croix* County.

Action for the wrongful conversion of four calves belonging to the plaintiff. The answer was a general denial.

On the trial the defendant testified, among other things, that after having taken up the calves in the afternoon, while they were doing damage on his premises, he kept them confined during the night, and in the morning turned them into the highway; that they fed about two hours in front of his house and then went upon a cross road further from the plaintiff's premises; that afterwards while he was driving away some stray pigs he scared the calves and they ran along with the pigs in a direction opposite to the plaintiff's land, and went into the field of one Packenham. The plaintiff on searching for the calves was unable to find them. Other evidence and the instructions to the jury are sufficiently stated in the opinion.

There was a verdict for the defendant, and from the judgment entered accordingly the plaintiff appealed.

Tobin vs. Deal.

For the appellant there was a brief signed by *John W. Bashford* and *Humphrey & McDonald*, attorneys, and *Tenney & Bashford*, of counsel, and oral argument by *Mr. R. M. Bashford*. They argued, among other things, that the defendant, after keeping the animals shut up during the night, had no right to turn them out in the morning. After electing to distrain he must proceed as required by sec. 1631, R. S. Any act inconsistent with his right as distrainor made him a trespasser. *Pettit v. May*, 34 Wis., 666; *Warring v. Cripps*, 23 id., 460; 1 Hilliard on Torts, 105, 488; 2 id., 231; 1 Wait's Law & Pr., 788; *Price v. Babbit*, 5 Alb. L. J., 382; *Allaback v. Utt*, 51 N. Y., 651. The intent of the defendant while driving the pigs, to drive the calves, could not be considered in determining his responsibility. *Dexter v. Cole*, 6 Wis., 319. He might, at first, have driven them to the confines of his own premises and then turned them into the highway, but had no right to drive them further. 1 Thomp. on Neg., 217, sec. 29; *Knott v. Digges*, 6 Har. & J. (Md.), 230; *Knour v. Wagoner*, 16 Ind., 414. Any unlawful interference with, or assertion of control over, the property of another, is sufficient to subject the party to an action of trespass or trover. *Bristol v. Burt*, 7 Johns., 254; *Sackrider v. M'Donald*, 10 id., 252; *Guille v. Swan*, 10 Am. Dec., 234; *Woolley v. Carter*, 11 id., 520. It is not necessary that the wrong-doer should derive or seek to derive any benefit from it. *Aschermann v. P. B. B. Co.*, 45 Wis., 262; *Hale v. Ames*, 15 Am. Dec., 150; Bigelow's L. C. on Torts, 420; *Scott v. Shepherd*, 2 W. Black., 892; *Leame v. Bray*, 3 East, 595; *Durell v. Mosher*, 8 Johns, 445; *Everett v. Coffin*, 6 Wend., 603; *Higginson v. York*, 5 Mass., 341; 3 Starkie on Ev., secs. 1492, 1497.

The cause was submitted for the respondent on the brief of *L. P. Wetherby*. He contended, *inter alia*, that a distress might be abandoned at any time and an action of trespass maintained. *Colden v. Eldred*, 15 Johns., 220. The

taking of the calves being lawful, the turning them out afterwards into the road from which they came was not a conversion because there was no purpose or disposition to deprive the owner of their use. Addison on Torts, 442; *Wilson v. McLaughlin*, 107 Mass., 587; 4 Pick., 249; 2 Starkie on Ev. (5th Am. ed.), 847; Chitty on Pl. (6th Am. ed.), 180; *Drake v. Shorter*, 4 Esp., 165.

COLE, C. J. It seems to me there was error in the charge in respect to the responsibility of the defendant if he drove the calves away and they were lost. On that point the learned circuit court, in effect, charged that if the defendant was driving some pigs down the highway, and the calves being in the highway ran along ahead of the pigs, and the defendant did not intentionally or purposely drive the calves away, but acted in good faith with ordinary care in the matter, he would not be liable; but, if he intentionally drove the calves away, and they wandered off and were lost, then he would be. This was making the responsibility of the defendant depend wholly upon the question whether he acted in good faith and with care, whereas, as said by plaintiff's counsel, the motive which prompted the act had nothing to do in determining his liability for the loss. The intent is not necessarily an element in trespass; it is sufficient if the act be committed without any justification or legal excuse. Any unlawful interference with, or acts of ownership over, the property, would render the defendant liable if, as a consequence, the calves were lost. *Dexter v. Cole*, 6 Wis., 319; *Hazelton v. Week*, 49 Wis., 661. Evidence as to the *quo animo* with which the trespass was committed is admissible to enhance the damages. But if the defendant drove the calves along the highway beyond his own premises, it was an unlawful act, and he is responsible for the consequences which resulted therefrom. *Young v. Vaughan*, 1 Houst. (Del.), 331; *Knott v. Digges*, 6 Har. & J., 230; *Knour v. Wag-*

Tobin vs. Deal.

*oner*, 16 Ind., 414; 1 Thomp. on Neg., 217, sec. 29; *Gilson v. Fisk*, 8 N. H., 404. The animals might have been wrongfully in the highway, but that would not excuse the defendant in driving them away. He knew the calves belonged to the plaintiff, and that he was driving them away from, or in a direction opposite to, the plaintiff's premises. This act was tortious, and rendered the defendant liable in this action for a conversion of the calves, if they wandered away and were lost, whether he intended that result or not.

There is some difference of opinion among the members of this court as to the correctness of the following charge, which was excepted to by the plaintiff. The court said: "The question of the liability of the defendant here depends altogether upon whether he drove that property off after he had turned it off from his place. It seems that he took up the property, the day before it is claimed he drove them off, somewhere about three or four o'clock. He claims that he did that to prevent them committing further depredation upon his crops, and [I am inclined to hold, as a matter of law, and so charge you, that, if he did so for the purpose of keeping the calves from committing depredation during the night, and if he had reasonable grounds for supposing that it was necessary to do so in order to protect his crops, he was justified in doing it.] If there was no necessity of it in order to protect his crops, he would not be justified in doing it, [and if there was such a necessity I think he had the right to do it, and he had a right to keep them and in the morning turn them into the highway, and if they were rightfully taken possession of, and he in the morning simply turned them into the highway without driving them off, he is not liable in this action.]" Those parts of the charge included in brackets were duly excepted to.

There was testimony given which tended to prove that the defendant found the calves doing damage on his lands, destroying his corn and cabbage, and that he took them up

in the afternoon, shut them in his yard, and kept them until the next morning, when he opened the gate and turned them into the highway. The calves came upon his lands from the highway, and there was no fence around the corn and cabbage. The defendant testified that he shut the calves up in his yard to prevent them from eating his cabbage. He says, "I shut them up so that they would not eat up my cabbage any more. I turned them out because I did not want to bother to hold them any longer. I did nothing to the calves any more after I turned them out. I see they went into Packenham's field. Then they went across and took the other road south."

This is the testimony to which the charge refers, and the question is, Was the court correct in holding, as a matter of law, that the defendant was justified, upon finding the calves doing damage on his premises, in confining them for the night in the yard to prevent them from destroying his crops, and then in the morning turning them into the highway whence they had come upon his land? It seems to me he had the right to exercise that control over the calves temporarily to protect his property. A person finding cattle wrongfully upon his land may turn them into the highway, and if they stray away he is not responsible. *Cory v. Little*, 6 N. H., 213; *Gilson v. Fisk, supra.* He has the right to drive them off by any of the ordinary means to which a prudent man would naturally resort, and may use a dog for that purpose, unless there is something in the size or habits of the dog, or in the mode of setting him on, or pursuing, which would negative the idea of ordinary care and prudence. *Wood v. La Rue*, 9 Mich., 158; *Clark v. Adams*, 18 Vt., 425; *Davis v. Campbell*, 23 Vt., 236; *Totten v. Cole*, 33 Mo., 138. But when cattle escape through a defect in defendant's fence, or in consequence of defendant's taking down a sufficient division fence which the plaintiff is bound to maintain, the defendant then cannot drive them into the

highway, but must return them to the close whence they escaped, or he will be deemed a trespasser. *Carruthers v. Hollis*, 8 Ad. & El., 113; *Roby v. Reed*, 39 N. H., 461; 2 Waterman on Trespass, § 889. Did the defendant become a trespasser because he shut the calves up in his yard for the night in order to protect his crops? For myself, I am unable to perceive any legal principle by which he should be so considered. He only exercised such control over the property for the time being as was necessary to protect himself. What should he have done under the circumstances? Did the law impose upon him the duty of driving the calves into the highway and taking his chances of their returning to his premises? Was he bound to sit up and watch them and see that they did not return? We can readily conceive of a case where cattle would do more damage in a night to one's crops, garden, or shrubbery, than they were worth, and where the owner was irresponsible. In view of these very obvious considerations, it seems to me when the defendant shut up the calves for the night in his yard in order to prevent their doing damage to his crops and turned them into the highway in the morning whence they had come upon his land, he only exercised a license or control over them which the law allowed. It may be conceded that he had the right to distrain the calves which were doing damage on his premises, and for that purpose might confine them as he did. But was he bound to pursue that remedy to justify his acts? He might not wish to distrain the calves. Indeed, it is certain from his own statements that he had no idea of doing so. He said he turned them out because he did not wish to "bother" with them or hold them longer. We suppose it was optional with him to distrain the calves or not. *Stevens v. Curtis*, 18 Pick., 227. If he elected to distrain he was then doubtless bound to follow strictly the course pointed out by the statute or he might become liable as a trespasser. If the distrainor fails to take the steps prescribed by the

statute he forfeits his right to detain the property for his damages. The owner may take it, or if the distrainor refuses to deliver it on demand he may sue in trover for it. *Nelson v. Merriam*, 4 Pick., 249; *Hale v. Clark*, 19 Wend., 498. A mere nonfeasance will not make a party a trespasser *ab initio*. *Hale v. Clark*. A party may abandon his distress and pursue his common law remedy. *Colden v. Eldred*, 15 Johns., 220. Where a distress is made, the statute gives the distrainor the right to the possession of the animal for twenty-four hours, within which time he must give the owner notice, etc., and the owner has no right within that time to take the animal from his inclosure. *Pettit v. May*, 34 Wis., 666; *Allaback v. Utt*, 51 N. Y., 651.

But this discussion of the law of distress does not greatly aid in determining the question of the correctness of the charge. It may have this relevancy, if the distrainor may relinquish the proceedings by distress before he has recovered satisfaction for his damages and bring an action of trespass, as the authorities hold, it would seem to follow that the first taking was not tortious. But the defendant did not claim that he shut up the calves for the night because he was intending to distrain them, and afterwards abandoned his purpose and turned them out, nor did the court put his justification upon any such ground. The view of the court was that he had the right to shut up the calves for the night, if necessary for the protection of his crops; that such an interference with the owner's possession would be lawful. He had the unquestioned right when he found the calves trespassing upon his premises to drive them directly into the highway, and if they wandered away and were lost it would not be his fault. He did not see fit to do that, but secured them for the night for a proper purpose, and turned them into the highway in the morning. Of course, he might have kept the calves in his yard, caring for them properly, notified the plaintiff where they were, and given the latter an op-

portunity to take them away. There would surely be nothing in all that inconsistent with the plaintiff's rights as owner. It would be a kind, neighborly act. But was the defendant bound to take that course? did he owe that duty to the plaintiff under the circumstances? It seems to me he did not. The golden rule, "Whatever ye would that men should do to you, do ye even so to them," might require this, but legal duties and obligations fall short of this high ethical standard. So it seems to me there was nothing illegal in the defendant's shutting up the calves to prevent them destroying his crops, or in his subsequent conduct in turning them into the highway. But as there was evidence that a few hours later he came upon the calves in the highway and drove them still further from the plaintiff's premises, upon a cross road, the charge first noticed was erroneous.

*By the Court.*— The judgment of the circuit court is reversed, and a new trial ordered.