JOHN L. HILL V. CAMPBELL COMMISSION COMPANY ET AL.

FILED MARCH 3, 1898.   No. 7840.

1. **Trover and Conversion.** One who converts the property of another is liable therefor.

2. ———: CHATTEL MORTGAGES. Every one who aids and assists in the conversion of the chattels of a third person is liable for their value.

3. ———: ———. A mortgagee of chattels, who is out of possession, and not entitled to possession by his mortgage, cannot maintain an action against a stranger for conversion.

4. ———: ———: PLEADING. In an action by a mortgagee of chattels for conversion of mortgaged property he must, in his petition, plead the facts which create his special ownership in the property, and show his right to the possession of the same.

ERROR from the district court of Douglas county. Tried below before HOPEWELL, J.  *Affirmed.*

*McCabe, Wood & Elmer,* for plaintiff in error.

*Bartlett, Baldrige & De Bord, contra.*

NORVAL, J.

Warren Fales resides in Cuming county, and is engaged in the business of raising, feeding, buying, and selling of cattle. He executed and delivered to the plaintiff John L. Hill three chattel mortgages on 219 specifically described steers, then in the possession of Fales, in said county, to secure the indebtedness incurred for the purchase price of the cattle, which mortgages are described as follows: One dated March 15, 1892, to secure $463.96, duly filed for record on the 26th day of the same month; another dated April 6, 1892, for the sum of $2,-860.52, which was duly recorded two days later; and the other was given May 21, 1892, for $1,440.82, which was duly filed for record six days after its date. Subsequently, on June 14, 1892, Fales gave to the Campbell Commission Company, of Chicago, one of the defendants

herein, a chattel mortgage on 300 steers, and on November 4, 1892, Fales gave said company a second chattel mortgage on 80 steers. On October 20, 1892, Fales executed and delivered to the defendants Foley & Chittenden, of South Omaha, a chattel mortgage on 170 steers to secure an indebtedness of the mortgagor to said last named firm. The evidence shows the cattle belonging to Fales, and on which he had executed mortgages as aforesaid, were shipped to, and sold by, the Campbell Commission Company as follows: 80 head on January 18, 1893, and 243 head on January 27 of the same year. On the next day 45 steers owned by Fales were shipped to South Omaha and sold by the defendants Foley & Chittenden. Plaintiff contends that the foregoing shipments included 100 steers, upon which he held senior mortgage liens, and that said cattle were sold by defendants without plaintiff's knowledge and consent. This action was instituted in the court below to recover damages for the conversion of cattle covered by plaintiff's mortgages. The defendants recovered verdicts upon the trial, and from the judgment rendered thereon plaintiff prosecutes a petition in error.

The record discloses that at the trial plaintiff, in open court, limited his claim to a recovery to the conversion of cattle by the defendants included in the shipment under the date of January 27, already alluded to. The evidence contained in the bill of exceptions tended to show that said 243 head were shipped to, and sold by, the Campbell Commission Company without plaintiff's knowledge or consent; that he held superior mortgage liens upon a portion of the cattle included in said shipment; that one Clausen, the agent and representative of the Campbell Commission Company, and Foley, of said firm of Foley & Chittenden, procured the cattle to be shipped, assisted Fales in cutting out the 243 steers from the remainder of the herd, in driving them to Pender, and in loading them on the cars at that place for shipment to Chicago. Foley and Fales went with the stock to Chicago, where the

cattle were delivered to, and sold by, the Campbell Commission Company, and the proceeds were applied by the defendants to their own use.

Instructions 5, 6, 9, and 10, given by the court on its own motion, and defendants' eighth request are criticised by counsel for plaintiff. The first four of these are in the language following:

"5. But if you find from a preponderance of the evidence that there was some of the P and K cattle in the shipment of 243 head, you will then further inquire and determine how and under what circumstances, and by whom, the said shipment was made, and you are instructed that if said shipment was made by Warren Fales of his own volition and without insistence or direction from the defendants, or either of them, then the defendants would not be liable in this action and your verdict should be in favor of defendants.

"6. To justify a verdict in favor of the plaintiff it must appear from a preponderance of the evidence that defendants, or one of them, directed and caused said shipment to be made for their own use and benefit and without the consent of the plaintiff, and that there were cattle in said shipment on which plaintiff held a first mortgage lien."

"9. If said shipment of 243 head was made voluntarily by Warren Fales, and not by the direction of the defendants, or either of them, the plaintiff cannot recover in this action.

"10. The fact alone that James Foley assisted in assorting and loading the cattle, and went to Chicago with them, would not justify a verdict against him or any of the defendants. To hold the said Foley or his firm liable it must appear that he was acting in a capacity different from a hired man, or in giving neighborly assistance. It must appear from the evidence that the shipment was made by reason of some direction or control of one or both of the defendants in pursuance of which said Foley acted."

The defendants' eighth request was to the effect that if the mortgagor Fales shipped the cattle of his own volition and that the Campbell Commission Company took no part in procuring the shipment to be made, except as requested by Fales, and that said company acted in good faith in selling the cattle, without any intention to appropriate the cattle, or the proceeds of the cattle, on which plaintiff had a lien, the plaintiff was not entitled to a verdict.

The following propositions are deducible from the authorities:

1. A conversion is any unauthorized act which deprives the owner of his property permanently or for an indefinite time. (*Stough v. Stefani*, 19 Neb. 468.)

2. In an action for conversion the motive which prompted the defendant to dispose of, or appropriate to his own use, the property of plaintiff is an immaterial issue. Whether defendant acted in good faith or not is of no consequence. (*Morrill v. Moulton*, 40 Vt. 242; *Freeman v. Underwood*, 66 Me. 229; *Miller v. Wilson*, 98 Ga. 567; *Union Stock Yard & Transit Co. v. Mallory*, 157 Ill. 554; *Hoffman v. Carow*, 22 Wend. [N. Y.] 285; *Koch v. Branch*, 44 Mo. 542; *Knapp v. Hobbs*, 50 N. H. 476; *Lee v. Mathews*, 10 Ala. 682; *Spraights v. Hawley*, 39 N. Y. 441; *Kimball v. Billings*, 55 Me. 147; *Tobin v. Deal*, 60 Wis. 87; *Platt v. Tuttle*, 23 Conn. 233; *Lee v. McKay*, 3 Ired. [N. Car.] 29.)

3. One who aids and assists in the wrongful taking of chattels is liable for a conversion, although he acted as agent for a third person. (*McCormick v. Stevenson*, 13 Neb. 70; *Stevenson v. Valentine*, 27 Neb. 338; *Cook v. Monroe*, 45 Neb. 349; *Osborne Co. v. Plano Mfg. Co.*, 51 Neb. 502; *McPartland v. Read*, 93 Mass. 231; *Edgerly v. Whalan*, 106 Mass. 307; *Lee v. Mathews*, 10 Ala. 682; *Gage v. Whittier*, 17 N. H. 312; *Kimball v. Billings*, 55 Me. 147; *McPheters v. Page*, 22 Atl. Rep. [Me.] 101.)

Under the foregoing principles each and all of the instructions to which reference has been made were manifestly erroneous. By the fifth, sixth, ninth, and tenth

instructions the jury were advised that there could be no recovery if Warren Fales voluntarily and of his own accord, without the aid and assistance of the defendants, shipped the cattle, even though the Campbell Commission Company sold the cattle on their arrival in Chicago without plaintiff's consent and appropriated the proceeds to their own use. The tenth instruction was faulty because it conflicts with the rule which makes one who abets in a conversion of property liable for its value. The eighth instruction given at the request of the defendants was bad, since it exonerated them from liability if they acted in good faith. If one sells the chattels of another without authority so to do, the act cannot be made any the less a conversion by proving that he acted in good faith, believing himself to be their owner, or was the agent of one whom he regarded to be the owner.

It is argued by counsel for defendants that the amended petition does not state a cause of action; hence no prejudice could have resulted from the giving of the instructions. If plaintiff's pleadings would not have supported a verdict in his favor, had one been returned, it is obvious that he cannot be heard to complain of errors in the charge of the court. It is not claimed by plaintiff that the paper filed by him, which is designated "Amended Petition," states any ground for action, but it is insisted that it is merely an amendment to the original petition, and was not intended to take the place of the latter. This position is undoubtedly sound, and was doubtless so regarded by the defendants in the court below, inasmuch as they answered both the "petition and the amended petition." Construing the original and the amended petitions together, they do not state sufficient facts to authorize a recovery for the conversion of the cattle. Plaintiff alleges the execution by Fales to himself of three chattel mortgages on 219 steers then in the possession of the mortgagor, the recording of the mortgages, that plaintiff had a lien on the property, and that defendants had personal knowledge thereof. There is not

pleaded a single condition contained in any of the mort-
gages, nor is it alleged that any condition has been
broken, or that any portion of the mortgage debt is due.
The averment that plaintiff has a lien on the cattle is a
mere conclusion of law. The Code requires a pleading to
set forth the facts, and not conclusions of law. (*Rainbolt
v. Strang*, 39 Neb. 339.) No fact is stated showing that
plaintiff had the right of possession of the property in
dispute. The petition should have pleaded the facts con-
stituting special ownership and plaintiff's right to pos-
session at the commencement of the action. (*Hudelson v.
First Nat. Bank of Tobias*, 51 Neb. 557; *Raymond v. Miller,*
50 Neb. 506.) The last case was an action for conversion
by a mortgagee of chattels against a stranger, and the
petition was held defective. In the opinion it was said:
"It will be observed that there is no averment in the peti-
tion to the effect that plaintiffs are the general owners of
the chattels in controversy, but that they predicate their
right to recover damages for the alleged conversion
merely upon a claim of special interest or ownership in
the property, arising by virtue of a chattel mortgage.
The terms and conditions of the mortgage are not
pleaded, nor any facts averred which disclose that any
of the stipulations therein contained have been broken,
or that anything is due plaintiffs upon the mortgage.
* * * Plaintiffs, in order to set forth a cause of ac-
tion, were required to plead in their petition the facts
constituting their special interest in the property, as well
as the facts relied upon to entitle them to maintain an ac-
tion for conversion against the defendants. This they
have not done." The following authorities sustain the
doctrine that the mortgagee of chattels cannot maintain
conversion against one who took wrongful possession of
the same, where at such time he was not in possession,
nor entitled to the immediate possession of the property:
4 Am. & Eng. Ency. Law 119; 1 Chitty, Pleading 167*,
618*; *Owens v. Weedman*, 82 Ill. 409; *Baker v. Seavey*, 163
Mass. 522; *Bank v. Fisher*, 55 Mo. App. 51; *Chandler v.*

*West*, 37 Mo. App. 631; *Barnett v. Timberlake*, 57 Mo. 499; *Draper v. Walker*, 98 Ala. 310.   The judgment is

AFFIRMED.