SULLIVAN COMPANY, APPELLANT, v. HANS LARSON, APPELLEE.

30 N. W. 2d 460

Filed January 2, 1948.    No. 32341.

*Sidner, Lee & Gunderson,* for appellant.

*Spear & Lamme* and *Robert L. Flory,* for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and LIGHTNER, District Judge.

PAINE, J.

This was an action to replevin 28 head of cattle. The sheriff only found 27 head which he delivered to plaintiff under its replevin bond. Defendant filed a general denial. Trial was had to the court without a jury. Judgment was for the defendant ordering a return of the cattle or $2,887.16 in damages. Plaintiff appeals.

The facts are not in dispute and may be briefly set out as follows:

A man who claimed that his name was O. W. Wade and that he was from Beemer, Nebraska, wanted to buy some cattle at the Sioux City Stockyards and bought 30 steers of E. G. Downing, a salesman for Sullivan Company, plaintiff, and paid for the steers by giving a check on a West Point bank, which check was later dishonored and returned to plaintiff.

The check was accepted and no inquiry made of the bank as to whether it was good.

A "Truck Billing" as the instrument is described on its top line was thereupon given to Wade by Downing shipping the cattle to Beemer, Nebraska, consigning

them to Sullivan Co., care of O. W. Wade, although Sullivan Co. has no yard or agent at Beemer.

Downing then had the cattle weighed, a clearance was obtained from the Bureau of Animal Industry, they were placed in a pen, and Wade hired a truck from the Sioux City Motor Express and paid for it with his own check. Wade got in the truck with its driver, Stokes. When they were on their way to Beemer Wade said to the driver that he had changed his mind and did not want to take the cattle to Beemer but wanted to take the cattle to Fremont. There they were unloaded at the Wells Commission Company. There 28 head of the cattle were bought at public auction by the defendant Larson who paid O. W. Wade in full for these cattle. One steer later died and the plaintiff replevined the remaining 27 head from the defendant. Two of the original 30 head of steers sold Wade were bought at Fremont by a Mr. Peterson.

Plaintiff assigns two errors for reversal: (1) That the court erred in finding that defendant had title to the 27 head of cattle; and (2) that the court erred in finding that plaintiff should return the cattle or pay the defendant the sum of $2,886.16.

With this statement of the undisputed facts the case resolves itself into a question of law. Generally, plaintiff claims this was a cash transaction, that the title never left plaintiff, and that the unlawful diversion of the cattle en route by Wade constituted a theft of the cattle.

On the other hand the defendant admits there are two lines of reasoning. One line of authorities insists that the title never passes until the check is paid and in such cases an innocent purchaser is without remedy.

But defendant says the majority rule is that while the title is defeasible and voidable as between the seller and buyer, it is absolute as far as an innocent purchaser is concerned.

The question is, can a party by fraudulently giving

a bad check, where a cash sale is intended, obtain such possession and title to personal property as will enable him to pass good title to his sub-vendee?

The exact question, except a check was not used, was answered in the affirmative by our court in Homan v. Laboo, 2 Neb. 291, in litigation over a span of mules and a replevin bond signed by · Homan, a proprietor of a livery stable in Omaha.

The next case in point in this court was Oleson v. Albers, 130 Neb. 823, 266 N. W. 632, 105 A. L. R. 714. Here a trucker, employed by plaintiff, delivered corn to defendant and collected the full price but failed to pay the money to plaintiff. This court said: "In the case at bar the plaintiff gave the trucker possession of the corn knowing that it was being sold and delivered by the trucker to the defendant. Plaintiff made no inquiry of the defendant as to what the transaction was, although both parties had telephones on the same system. It was clearly the plaintiff who placed Worrell, the trucker, in a position such that an innocent purchaser of this corn had a right to assume that the trucker was authorized to sell and collect the purchase price of the corn, and while it is unfortunate that the plaintiff was deceived in the confidence that he placed in the trucker, yet the law has many times been laid down: 'Whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it.' Broom's Legal Maxims (9th ed.) 463."

As applied to the case at bar, the plaintiff intentionally or negligently allowed Wade to hold himself out as the owner of the property, having possession of this load of steers in a truck Wade had hired to haul them and thereby he appeared to have unlimited authority to convey title to these steers. If an innocent third party in good faith acquires title to the property upon the strength of all these facts, does not justice demand that the innocent party should be · protected from de-

mands of plaintiff, although the plaintiff could have seized and taken them from Wade who had come into fraudulent possession of them? See the provisions of our criminal law against frauds by consignors as found in section 28-1202, R. S. 1943.

There is still a third Nebraska case of Parr v. Helfrich, 108 Neb. 801, 189 N. W. 281, in which an automobile was bought with a forged check and sold to an innocent third party from whom plaintiff replevined it and verdict for plaintiff was appealed to this court and reversed. This court quoted from a Massachusetts (12 Pick. 307) case as follows: " 'The difference between the case of property thus obtained, and property obtained by felony, is obvious. In the latter case, no right either of property or possession is acquired and the felon can convey none. We take the rule to be well settled that where there is a contract of sale, and an actual delivery pursuant to it, a title to the property passes, but voidable and defeasible as between the vendor and vendee, if obtained by false and fraudulent representations. The vendor therefore can reclaim his property as against the vendee, or any other person claiming under him and standing upon his title, but not against a *bona fide* purchaser without notice of the fraud. The ground of exception in favor of the latter is that he purchased of one having a possession under a contract of sale, and with a title to the property, though defeasible and voidable on the ground of fraud; but as the second purchaser takes without fraud and without notice of the fraud of the first purchaser, he takes a title freed from the taint of fraud.' "

This case at bar brings before us several paragraphs of the Uniform Sales Act.

The first paragraph of section 69-423, R. S. 1943, reads: "(1) Subject to the provisions of this act, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with

the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell."

In our opinion the plaintiff's conduct precluded him from denying Wade's authority to sell under the facts in the case at bar.

Section 69-427, R. S. 1943, refers to documents of title, that is, to bills of sale and bills of lading.

The plaintiff claims that a party who ships goods consigned in the bill of lading to himself, his agent, or order will be presumed to have retained title in himself and cites many authorities to sustain this contention.

However, no authorities were necessary on that proposition. But in the case at bar the defendant claims this "Truck Billing," Exhibit 1, was not a real bill of lading but an "artificial device" on which "Consignor" was Sullivan Co. On the next line Sullivan Co. was shown to be "Consignee" by only two check marks and the third line "Care of" was followed by "O W Wade" in handwriting, with destination Beemer, Nebraska. The plaintiff consigns the cattle to a place where it had no agent and no one to receive the load, and on the same instrument in the next line put them in "Care of O W Wade," thus designating him as agent to receive them.

This is quite different legally from consigning them to themselves on shipper's order and sending the order to the bank with sight draft attached and only when draft is paid does the title change hands.

In the case at bar, when these cattle were delivered to Wade, he could have taken them in his own truck, and there was no act still to be done by plaintiff to transfer the title to Wade.

The plaintiff cites cases from Oregon, Georgia, Tennessee, New Jersey, and Minnesota. In each case he claims a bad check was given and the property was recovered from an innocent purchaser. In our opinion

the great weight of authority is on the other side.

However, we have reached the conclusion that our Nebraska holdings, both before and after the adoption of the Uniform Sales Act, are all to the effect that the rights of an innocent purchaser from one who has obtained the property by fraud will take a good title which must be protected. We believe the judgment was right and it is hereby affirmed.

AFFIRMED.