### SULLIVAN CO. v. WELLS.
#### Civ. No. 117–48.

United States District Court
D. Nebraska, Omaha Division.
March 14, 1950.

318

A. C. Sidner (of Sidner, Lee & Gunderson), Fremont, Neb., and Edwin Cassem (of Kennedy, Holland, DeLacy & Svoboda), Omaha, Neb., for plaintiff.

William H. Lamme (of Spear & Lamme), Fremont, Neb., for defendant.

DONOHOE, Chief Judge.

The plaintiff was the owner and in possession of thirty head of steers in the Sioux City Stock Yards at Sioux City, Iowa, and on the 15th of October, 1946, the plaintiff agreed to sell said steers to a party who claimed to be O. W. Wade, of Beemer, Nebraska, for the sum of $3,266; as part of said transaction Wade delivered his check to the plaintiff and the plaintiff delivered to Wade a "Truck Billing". This "Truck Billing" was not a real bill of lading and it was filled in as follows:

Consignor Sullivan Co., on the first line; Consignee, followed by two check marks, on the second line; and Care of O. W. Wade on the third line.

The Supreme Court of Nebraska commenting on this very same "Truck Billing" in the case of Sullivan Co. v. Larson, 149 Neb. 97, 30 N.W.2d 460, 462, had this to say:

"This is quite different legally from consigning them (the cattle) to themselves on shipper's order and sending the order to the bank with sight draft attached and only when draft is paid does the title change hands.

"In the case at bar, when these cattle were delivered to Wade, he could have taken them in his own truck, and there was no act still to be done by plaintiff to transfer the title to Wade."

Wade secured the Sioux City Motor Express, a common carrier of livestock, with its principal place of business in Sioux City, Iowa, to load the cattle into their truck and start for Beemer, Nebraska. At some point between Sioux City and Beemer, Wade directed the driver to deliver the cattle to Fremont, Nebraska, which the driver did. On the 16th of October, the defendant, Wells Commission Co., sold the cattle and delivered the proceeds of the sale to Wade. Thereafter, the check for $3,266, given by said Wade to the plaintiff, was returned marked "insufficient funds". Sullivan Company had not made any inquiries with respect to Wade at West Point, Nebraska, or at the First National Bank of West Point, the bank upon which Wade drew his check in payment of the cattle.

In Sullivan Co. v. Larson, supra, it was held that title to twenty-eight head of the cattle passed to Larson, a bona fide purchaser. And in as far as that case is material to the case at hand this court is

bound by that decision. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487. In the case before us the seller passed title to the goods in question to Wade, even though Wade gave a worthless check in payment thereof. It is true that some cases have held that such a false check is no payment and that not only does title not pass to the fraudulent buyer, but also that the seller may assert his title against an innocent purchaser from the buyer.

■ The reasoning of these decisions is obviously unsound. The reasoning upon which they are based is that a worthless check is no payment of the purchase price, and the condition has not happened upon which the property was to pass. But the real question is: Did the seller assent to transfer the ownership in the goods? It can hardly be doubted that he did. It is true that this assent to the transfer of the property has been procured by fraud and that the seller may reclaim the goods or their proceeds from the fraudulent buyer. But where the seller is induced to part with his property by fraud, the voidable title of the fraudulent buyer becomes an *indefeasible title* upon a bona fide purchase for value from the fraudulent buyer. Williston on Sales, 1948 Ed., Vol. 2, Sec. 346a; Parr v. Helfrich, 108 Neb. 801, 189 N.W. 281; Crescent Chevrolet Co. v. Lewis, 230 Iowa 1074, 300 N.W. 260; Sullivan Co. v. Larson, supra.

■ It is inconsistent that we should say in one breath that Wade had a title which became indefeasible when the cattle were sold to the innocent purchaser Larson, and then in the next breath say that Wade had no title and that the innocent factor, Wells Commission Company, is guilty of conversion. Especially in view of the fact that the plaintiff took no steps to void the title which passed to Wade until after the factor had turned the innocent purchaser's money over to Wade, whom the plaintiff had clothed with all the indicia of ownership.

But the plaintiff contends that the equities of the parties and the doctrine of estoppel are not material in this case because the situation is covered by a special rule of agency. And, since it is true that we are here dealing, not with an innocent purchaser for value, but with an innocent factor, the court has carefully considered the merits of the plaintiff's contention, examining thoroughly the authorities which the plaintiff has cited in support of its position.

For example, the Restatement of Agency, Section 349, is cited for the following proposition: "An agent who does acts which would otherwise constitute conversion of a chattel is not relieved from liability by the fact that he acts on account of his principal and reasonably, although mistakenly, believes that the principal is entitled to possession of the chattels."

■ To illustrate this proposition, the Restatement sets forth two situations, but in both of these situations the goods were stolen from the rightful owner, which obviously distinguishes them from the case before us. In addition to these illustrations, several comments are set forth qualifying the general rule. The qualification which covers the case before the court is set forth in Comment g., which provides as follows: "Likewise, an agent who, without notice of the fraud, sells goods, title to which his principal has obtained by fraud, is not liable to the defrauded owner."

It seems clear therefore that reading Section 349, as a whole, the Restatement is little support for the plaintiff's position.

■ In 35 C.J.S., Factors, § 57b, page 465, the rule is laid down that "A factor is liable to the true owner for conversion where he receives from his principal property to which his principal has no right, and does not turn over the property or its proceeds to the true owner. Generally, the factor's good faith and ignorance of the true ownership are no defense; *but it is a defense that he was misled by the owner*".

■ Thus, where the owner has clothed the principal with the indicia of ownership, he has misled the agent. Kempner v. Thompson, 1907, 45 Tex.Civ.App. 267, 100 S.W. 351.

And so it is with the other authorities. In each there is some qualification of the

general rule which seems more applicable to the case before us than the rule itself.

In none of the Nebraska cases cited does it appear that the plaintiff himself is responsible for the situation which made the fraudulent transaction possible. It is this factor which distinguishes the present case from Cook v. Monroe, 45 Neb. 349, 63 N.W. 800; Stevenson v. Valentine, 27 Neb. 338, 43 N.W. 107; Hill v. Campbell Commission Co., 54 Neb. 59, 74 N.W. 388; Stough v. Stefani, 19 Neb. 468, 27 N.W. 445, and the others. But even if the court did not feel that this situation is an exception to the majority rule, but a minority rule as the plaintiff contends, there is another aspect of the case which would make it inequitable to hold this defendant liable.

■■■■ The defendant is licensed under the Packers and Stockyards Act of 1921, Chapter 9, Title 7 U.S.C.A. § 181 et seq. It is its duty to serve all without difference or discrimination. Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229. It should be remembered that the common-law rule of agency has become a harsh one as the relationship between principal and agent has become more and more impersonal. The common-law rule was based on the reasoning that since the agent is free to choose whom he wishes to serve as his principal, that he should be held liable if he chooses to assist, even unknowingly, his principal in the perpetration of a fraud upon a third person. And the rule is not unjustly oppressive as long as the agent remains free to choose whom he will serve. But the Packers and Stockyards Act has so limited the defendant's freedom of choice as to make a strict application of the common-law rule oppressive in this case. See Blackwell v. Laird, 236 Mo.App. 1217, 163 S.W.2d 91. To hold otherwise would deprive all small cattle commission men of an opportunity to engage in business. Forcing them to serve all, without difference or discrimination, and then holding them personally liable for the credibility of all they serve would soon send them tumbling into insolvency. A result which was not intended by either the common-law rule of agency nor the Packers and Stockyards Act.

The plaintiff relies heavily on the case of Birmingham v. Rice Bros., 238 Iowa 410, 26 N.W.2d 39, 2 A.L.R.2d 1108, which is somewhat similar to the case before the court. However, that case was decided by a divided court (5 to 4) and the soundness of the majority decision might well be questioned in view of the strong dissent. The majority felt that the Packers and Stockyards Act did not in any way alter the ordinary rules of agency. But the dissenting opinion points out that the act changes the status of commission agencies from that of ordinary factors to public utilities. Tagg Bros. & Morehead v. United States, D.C., 29 F.2d 750, affirmed 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524; Farmers' Livestock Commission Co. v. United States, D.C., 54 F.2d 375; Nashville Union Stockyards v. Grissim, 153 Tenn. 225, 280 S.W. 1015. The sound implications of this change should not be disregarded or rejected when invoked by the utility that is made subject to regulation. In the words of Judge Smith [238 Iowa 410, 26 N.W.2d 47]: "The Act should not be interpreted in one way for one purpose and in a different way for another. The agencies should not be * * * converted by the Act into public utilities, required to serve without discrimination and still held to personal responsibility for the honesty and good faith of the customers they are required to serve." Birmingham v. Rice Bros., supra. And authority for this proposition is not completely lacking. Abernathy v. Wheeler, 92 Ky. 320, 17 S.W. 858, 36 Am.St.Rep. 593. The Abernathy case represents a well-reasoned exception to the general rule of agency and should not be considered as only a minority rule. It can be distinguished from Mason City Production Credit Association v. Sig Ellingson & Co., 1939, 205 Minn. 537, 286 N.W. 713, which is sometimes said to represent the majority view. In the latter case, a recorded mortgage was involved and the court felt that such mortgage gave to the agent notice of the plaintiff's right in the property. To have held otherwise would have rendered the recording statute ineffective in that sit-

uation. In the former case there was no such constructive notice.

For the reasons set forth above, the court feels that this case falls into two recognized exceptions to the rule of agency which makes a factor liable for conversion when he sells property which his principal does not own. First, the principal Wade acquired an indefeasible title and all the indicia of ownership through the action of the plaintiff and consequently the plaintiff should not be allowed to complain of the acts of the innocent factor, Wells Commission Co. Secondly, the Packers and Stockyards Act deprives the factor of that degree of choice which is necessary to support the ordinary rule of agency, and for that reason, the rule of agency as set forth by the plaintiff should not be strictly applied to the case at hand.

Judgment for the defendant will be entered. The action will be dismissed at plaintiff's costs.