GUCKEEN FARMERS ELEVATOR COMPANY, A CORPORATION, APPELLANT, v. SOUTH SOO GRAIN COMPANY, A CORPORATION, APPELLEE.

109 N. W. 2d 728

Filed June 23, 1961. No. 34963.

*Putnam, Spencer & Willette* and *Joseph E. Marsh,* for appellant.

*S. W. McKinley, Jr.,* and *Richard L. Jandt,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SIMMONS, C. J.

This is an action for conversion of grain. The plaintiff is a corporation organized and doing business in Minnesota. The defendant is a corporation organized and doing business in Nebraska. The above parties herein will be referred to as plaintiff and defendant.

One Harold W. Striemer was an individual engaged in the business of buying and selling grain from a location in the State of Minnesota. He will be referred to herein as Striemer.

The action was tried to the court without a jury. The court rendered judgment for the defendant. We affirm.

The facts of the case are not in serious dispute. Striemer's business was that of buying grain, trucking it to another destination, and selling it. These facts were known to the plaintiff and defendant. Several days before May 26, 1958, Striemer arranged to buy corn of the plaintiff. Between May 23, 1958, and May 29, 1958, Striemer bought 13 loads of grain from the plaintiff. Whether it was all sold to the defendant does not appear. This action involves seven truckloads of corn.

The method of doing business was for Striemer to send a signed check with payee and amount in blank to the plaintiff, the load of corn was delivered, and the price to be paid and the payee were filled in. The corn was then taken to defendant, delivered, and Striemer was paid for it. Plaintiff also delivered to each truckdriver a sales slip showing the amount paid, which in each instance was the amount of the check.

The checks for the seven loads of corn here involved were protested for insufficient funds.

Plaintiff and another grain company then at least as early as June 3, 1958, filed complaints with the Railroad and Warehouse Commission of Minnesota for the amount due and owing them "for the purchase price of grain."

Others joined in the proceedings so that when the matter was concluded on September 22, 1958, there was a finding that the total amount of checks not paid was $46,293.69. Striemer's bond, which they obviously sought to reach, was $7,500. The commission prorated that amount. Plaintiff received therefrom $1,553.10.

In the meantime on June 20, 1958, plaintiff notified defendant that its purchase amounted to a conversion and demanded the value of the amount of corn delivered to it.

Upon defendant's refusal to pay, plaintiff brought suit for the value of the amount of corn represented by seven checks. It does not purport to give credit to the defendant or in its pleadings mention the pro rata amount received by it in the proceedings before the commission.

The Minnesota statute is pleaded and admitted. It provides in part: "(1) Subject to the provisions of this chapter, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell." M. S. A., § 512.23.

It will be noted that it is substantially the same as our section 69-423, R. R. S. 1943.

The plaintiff takes the position that the sale of the corn, so far as the passing of title was concerned, was conditional and that hence title did not pass to Striemer except in the event the checks were paid.

It is quite apparent that plaintiff treated the transaction as one passing title and that it so intended. In Parr v. Helfrich, 108 Neb. 801, 189 N. W. 281, we held: "* * * when property is obtained from its owner by fraud, and the facts show a sale by the owner to the fraudulent vendee, an innocent purchaser of the property from the fraudulent vendee will take good title. The inquiry is: Did the owner intend to transfer the owner-

ship as well as the possession of the property? If he did, there was a contract of sale. The essential thing in the passing of title to personal property is that the vendor and the vendee intend that the title shall pass, and not what induced them to have that intention. But one who has been induced by fraud to part with title to his property has his remedy either in an action because of the fraud and deceit, or he may rescind the contract and recover back the property while title still remains in the fraudulent vendee, but he cannot recover it when title has passed to a *bona fide* purchaser for value."

Plaintiff immediately recognized the fact that a sale had been made. Within 4 days of the last transaction it was proceeding to collect on Striemer's bond. It accepted the funds available to it for payment on the purchase price.

Plaintiff clearly treated Striemer as the purchaser of the grain and considered that title passed to him.

As was held by the court in a like case in Smith v. Norman Motors Co., 84 Ga. App. 186, 65 S. E. 2d 699: Plaintiff cannot take the inconsistent position of treating Striemer as a purchaser and recover on his bond and at the same time recover in conversion from the defendant on the theory that title had not passed to Striemer and hence not to defendant.

We construed this act in Sullivan Co. v. Larson, 149 Neb. 97, 30 N. W. 2d 460, and held: "When property is sold and delivered to a fraudulent vendee an innocent purchaser of the property from the fraudulent vendee will take good title." See, also, Sullivan Co. v. Wells, 89 F. Supp. 317.

We hold that plaintiff by its conduct has precluded it from denying the authority of Striemer to sell. It is clear that it sold the corn to Striemer knowing that he intended its resale. It was stipulated that defendant paid Striemer for the corn at the time of delivery to it.

Our statute provides: "Where the seller of goods has a voidable title thereto, but his title has not been avoided

at the time of the sale, the buyer acquires a good title to the goods, provided he buys them in good faith, for value, and without notice of the seller's defect of title." § 69-424, R. R. S. 1943.

Construing this statute, we have held: "* * * if after seller delivers possession to the buyer pursuant to a sale induced by the buyer's fraud the property has passed into the hands of a bona fide purchaser for value, the right of the original seller to recover the property is lost." Terry Bros. & Meves v. National Auto Ins. Co., 160 Neb. 110, 69 N. W. 2d 361.

We find no merit in plaintiff's cause.

The judgment of the district court is affirmed.

AFFIRMED.