HUDIBURG CHEVROLET, INC., Appellant, v. PONCE, Respondent.

*June 6—June 29, 1962.*

For the appellant there was a brief by *Michael J. Dunn* and *Carl F. Schetter,* both of Milwaukee, attorneys, and *Morgan & Ferrish* of Midwest City, Oklahoma, of counsel, and oral argument by *Mr. Schetter.*

For the respondent there was a brief by *Rebholz & Duffey* of Milwaukee, and oral argument by *Ed. A. Rebholz.*

FAIRCHILD, J.   Plaintiff Hudiburg parted with possession of the automobile in exchange for a $500 check and James' promise to pay the balance, secured by a reservation of title. After the check proved worthless, Hudiburg did what it could to rescind the contract, but was unable to locate and repossess the car. James removed it to Wisconsin and sold it to a dealer who was acting in good faith, without notice, and for value.

If it be true, as claimed by Hudiburg, that under these circumstances James initially obtained no property interest in the automobile by virtue of the contract he could pass none to the dealer in Wisconsin.[1]

---

[1] "SALE BY A PERSON NOT THE OWNER. (1) Subject to the provisions of this act, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell." Sec. 121.23 (1), Stats.

If it be true that the contract was not void or its effectiveness suspended, but voidable for fraud, and if, as claimed by Hudiburg, the contract was rendered a nullity by the act of rescission, James' transfer to the dealer created no title in the dealer, and Ponce acquired none.[2]

If, however, neither of the above propositions be true, James had, at the time of the Wisconsin transfer, the property interest of a conditional sales contract vendee, subject to Hudiburg's reservation of title for security. Then, because the contract was not filed in Milwaukee county within ten days after Hudiburg learned of its presence there, the reservation of title was void as to purchasers from James.[3]

1. *Was James' apparent interest as conditional sales contract vendee a nullity from the beginning?* Where goods are sold and delivered in exchange for a check and the parties do not express any intention with respect to the passage of title to the buyer, the courts hold different views as to what

[2] Sec. 121.23 (1), Stats., *supra,* footnote 1.

"SALE BY ONE HAVING A VOIDABLE TITLE. Where the seller of goods has a voidable title thereto, but his title has not been avoided at the time of the sale, the buyer acquires a good title to the goods; provided, he buys them in good faith, for value, and without notice of the seller's defect of title." Sec. 121.24.

[3] "REFILING ON REMOVAL. When, prior to the performance of the condition, the goods are removed by the buyer from a county in this state to another county in this state in which such contract or a copy thereof is not filed, or are removed from another state into a county in this state where such contract or copy is not filed, the reservation of the property in the seller shall be void as to the purchasers and creditors described in sec. 122.05, unless the conditional sale contract or a copy thereof shall be filed in the county to which the goods are removed, within ten days after the seller has received notice of the county to which the goods have been removed. The provisions of this section shall not apply, however, to the goods described in sec. 122.08. The provisions of sec. 122.11 regarding the duration of the validity of the filing and the necessity for refiling shall apply to contracts or copies which are filed in a county other than that where the goods are originally kept for use by the buyer after the sale." Sec. 122.14, Stats.

is implied. One theory is that the sale is for cash, the check is conditional payment, and title does not pass until the check is cashed. If the check be dishonored, a third party who buys from the first buyer obtains no title because the first buyer had none. This has been the rule in most American jurisdictions.[4]

The opposing view is that the parties intend that the title pass to buyer immediately. If the check is worthless, the seller has ordinarily been induced to act by fraud. The fraudulent buyer has a voidable title which becomes indefeasible upon a *bona fide* purchase for value from the fraudulent buyer. This view prevails in England and is reflected in a few American decisions.[5] In substance, it has been incorporated in the Uniform Commercial Code, and as legislatures adopt the code it is becoming the rule in more American states.[6]

---

[4] Vold, Law of Sales (hornbook series, 2d ed.), p. 169, sec. 30; 2 Williston, Sales (rev. ed.), p. 343, sec. 346a; Corman, Cash Sales, Worthless Checks and the Bona Fide Purchaser, 10 Vanderbilt Law Review (1956), 55, 59, 60.

[5] Corman, *op. cit.*, 59; Williston, *op. cit.*, p. 345, sec. 346b.

[6] Sec. 2–403 of the Uniform Commercial Code provides in part (p. 124):

"(1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good-faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though

"(b) the delivery was in exchange for a check which is later dishonored, . . ."

The same provision appears as sec. 402.403 (1) in the proposed bill recommended by the Commercial Code Committee of the Wisconsin legislative council. It also appears as sec. 2–403 (1), Title 12A, Laws of Oklahoma, effective, however, at the close of 1962. The code has been adopted in 16 states, although not yet effective in all of these.

Hudiburg claims that the conditional-payment rule is the law of Oklahoma, and indeed several decisions of the supreme court of Oklahoma appear to support that proposition.[7] In each of those cases, however, the worthless check was given for the full purchase price, and we have found no decision or authority holding that the effectiveness of a conditional sales contract is suspended until a check given as down payment is cashed. Of course where a conditional sales contract is involved, the seller has relied in large part upon the buyer's promise to pay and seller's ability to enforce his security interest under the contract, as well as upon the check received.

Since the Uniform Commercial Code applies the rule that a worthless check only renders the buyer's title voidable even when given in full payment, since that appears to us to be the sounder view, and since there is nothing to show that under Oklahoma law the effectiveness of a conditional sales contract is suspended until the check given as a down payment is cashed, we conclude that James did acquire the property interest of a conditional sale contract vendee.

2. *Was the rescission effective as against a good-faith purchaser from James?* The parties stipulated that when the check was returned to Hudiburg, it "rescinded said conditional sale contract and unsuccessfully attempted to locate the said automobile and regain possession." We interpret this stipulation as meaning that Hudiburg decided to rescind and took whatever steps it could to effect rescission except that it was unable to find or repossess the automobile.

We can find no authorities specifically defining the minimum requirement for rescission of a conditional sales contract where the goods have already been delivered to the vendee,

---

[7] *Mott v. Nelson* (1923), 96 Okla. 117, 220 Pac. 617, 618; *Al's Auto Sales v. Moskowitz* (1950), 203 Okla. 611, 224 Pac. (2d) 588, 591; *Valley Loan Service v. Neal* (1951), 205 Okla. 94, 235 Pac. (2d) 932; *Motors Ins. Corp. v. Craig* (Okla. 1957), 313 Pac. (2d) 515.

and are still in his possession at the time of the attempted rescission. Although a number of authorities speak of rescission in terms of repossession, none of them deals squarely with the problem we have in mind.[8]

[8] "Where the sale is induced by the buyer's fraud the property interest in the goods usually passes to the buyer. In such cases, however, it is subject to the seller's power to rescind the transfer and revest the property interest in himself. . . .

"The defrauded seller's power to rescind and revest the property interest in himself applies not only against the fraudulent buyer himself. It applies also against the fraudulent buyer's transferees or successors unless cut off by transfer to an innocent purchaser for value without notice." Vold, Law of Sales (hornbook series, 2d ed.), p. 397, sec. 79.

"If a buyer obtains by fraud the seller's assent to transfer the ownership of goods, there is no doubt that the buyer gains title thereby. Yet there is no more doubt that the seller may regain his title by his own election so to do. Not only may he bring trover, or its equivalent, but he may also bring replevin. And if the seller can regain possession of the goods peaceably without the aid of a court he may do so, and thereby is revested with title." 3 Williston, Sales (rev. ed.), p. 207, sec. 567. See Rescission. by One Party for Cause, 78 C.J.S., Sales, p. 275, sec. 566.

" 'But one who has been induced by fraud to part with title to his property has his remedy either in an action because of the fraud and deceit, or he may rescind the contract and recover back the property while title still remains in the fraudulent vendee, but he cannot recover it when title has passed to a *bona fide* purchaser for value.' " *Guckeen Farmers Elevator Co. v. South Soo Grain Co.* (1961), 172 Neb. 426, 109 N. W. (2d) 728, 730.

". . . Where a buyer of goods has been guilty of such fraudulent conduct as will authorize the seller to rescind the contract and recover the goods, a third person claiming them as a subpurchaser, must show that he bought from the original vendee and that he paid the reasonable value of the goods or took them at their reasonable value in payment of a *bona fide* debt. . . . But if the subvendee shows that he paid reasonable value for the goods, the burden is on the seller to show notice to the subvendee of the fraud of the original vendee at the time of the purchase or before payment. of the purchase price." 3 Black, Rescission and Cancellation (2d ed.), p. 1550, sec. 641.

"Subject to the rules stated in section 481, where a transfer of land or other things is voidable for fraud or misrepresentation and

Assuming that Hudiburg did all it reasonably could do to rescind, and was prevented from repossession by the acts of James, the attempted rescission may well have been effective between them. We conclude, however, that in order to avoid James' voidable property interest coupled with possession so that he could pass no title to a good-faith purchaser for value, Hudiburg must have repossessed the automobile or in some other way made it impossible for a purchaser to buy in good faith. In the situation presented, either the original seller or the ultimate buyer must suffer loss because of James' fraud. In all transactions of this type a seller takes the more-obvious risks, and has better methods available for reducing or avoiding them than the ultimate buyer. Between them we think it just that the loss should fall on the seller.

3. *Reservation of title void as against Milwaukee dealer and Ponce.* The Milwaukee dealer and Ponce purchased the automobile without notice of the reservation of title to Hudiburg in the conditional sales contract. Had the contract been filed in Milwaukee county under sec. 122.14, Stats., within ten days after Hudiburg received notice the automobile had been removed to Milwaukee, it could have enforced its rights under the contract. This was not done, and the reservation of title in the contract is void.[9]

We recognize that some states do not apply their own recording acts to chattels brought into one of these states with-

a judgment for their value is not an adequate remedy, the transferor on exercising his power of avoidance can have a decree for the specific restoration of the land or things, except that such a decree cannot be had against a *bona fide* purchaser for value or one succeeding to the rights of such a purchaser, or in regard to anything not still capable of retransfer." Restatement, 2 Contracts, p. 932, sec. 489.

[9] *Universal Credit Co. v. Finn* (1933), 212 Wis. 601, 250 N. W. 391.

out the prior owner's consent.[10]  Sec. 122.14, Stats., allows the seller a reasonable period of time in which to file after receipt of notice that the chattel is here.  We see no reason not to apply a statute of that type to chattels brought here without the seller's consent.

*By the Court.*—Judgment affirmed.

---

[10] Leflar, Conflict of Laws, p. 295, sec. 155.  See Restatement, Conflict of Laws (2d), Tentative Draft No. 5, pp. 121, 134, secs. 268, 275, and comments.